IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ HERNANDEZ,<br><br>        Plaintiff,<br><br>  v.<br><br>CITY OF NAPA, et al.,<br><br>        Defendants.             / | No. C-09-02782 EDL<br><br>**ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART CITY DEFENDANTS' MOTION TO DISMISS AND DEFENDANT HALLMAN'S MOTION TO DISMISS** |

This action arises out of the arrest of Plaintiff Luz Hernandez on April 1, 2008 by police officers from the City of Napa. Before the Court are: (1) the Motion to Dismiss of Defendants City of Napa, Police Chief Richard Melton, Police Officers Garth Bender, Ryan Cole and Ryan Hibbs ("the City Defendants"); and (2) the Motion to Dismiss and Joinder in the City Defendants' Motion to Dismiss of Defendant County of Napa Deputy Sheriff John Hallman. The Court held a hearing on October 20, 2009. For the reasons stated at the hearing and below, the Court issues the following Order.[1]

---

[1] Plaintiff, the City Defendants and Defendant Hallman have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). Defendant Donald Green has not been served in this matter and, therefore, is not yet a party. The consent of this unserved defendant is not required in order to rule on the motions to dismiss. See Ornelas v. De Frantz, 2000 WL 973684, *2, fn.2 (N.D. Cal. 2000) (citing Neals v. Norwood, 59 F.3d 530, 532 (5th Cir. 1995) (magistrate judge had jurisdiction to dismiss prisoner's civil rights action without consent of the defendants because the defendants had not been served yet and therefore were not parties)).

**FACTS**

On April 1, 2008, Plaintiff and Defendant Green, who is a Napa State Hospital police officer, were involved in a verbal altercation which resulted in the break-up of their romantic relationship. First Am. Complaint ("FAC") ¶ 10. On that day, Plaintiff left work before 10:00 p.m. so that she would have time to get home before Green's shift ended at 10:00 p.m. FAC ¶ 11. Plaintiff arrived at her house at 9:50 p.m. to find her bedroom television on the sports channel and Green emerging from the bathroom with an unsteady gait and slurred speech. FAC ¶ 11. Green was wearing only his underwear and had a pair of scissors in his hand, which he said he had been using to cut his moles. FAC ¶ 12. He was bleeding from a small cut on the right side of his torso. FAC ¶ 12.

Plaintiff asked Green to leave. FAC ¶ 13. Green stumbled towards Plaintiff, tried to hug her and stated that he wanted to talk to her. FAC ¶ 13. Plaintiff ran to the front door, but Green grabbed her from behind with both of his hands. FAC ¶ 13. Plaintiff tried to get away, and told Green that she wanted to leave. FAC ¶ 13. He would not let her go and they continued to wrestle. FAC ¶ 13. Plaintiff telephoned 911, but Green slapped the telephone from her hands. FAC ¶ 13. She started yelling for help. FAC ¶ 13. Green grabbed Plaintiff's left arm and intentionally rotated her arm while adding pressure to her left shoulder resulting in pain. FAC ¶ 14. Plaintiff started fighting, kicking, slapping, scratching, yelling and swearing in self-defense. FAC ¶ 14.

Green was on top of Plaintiff until Napa police officers arrived with Defendant Deputy Sheriff Hallman. FAC ¶ 15. When Napa Police Officer Bender arrived at Plaintiff's house, he could overhear Green assaulting Plaintiff. FAC ¶ 15. As soon as the officers entered Plaintiff's home, they separated Plaintiff and Green. FAC ¶ 15. Plaintiff was escorted into her room, and Hallman asked her if she was okay. FAC ¶ 15. She was sweaty and had red marks on her wrists that were covered by her long-sleeved sweater. FAC ¶ 15. Plaintiff was scared, wanted no more problems and wanted Green to leave her house. FAC ¶ 15.

Plaintiff told Hallman and the rest of the officers that she dialed 911, that the house was hers, and that she lived alone. FAC ¶ 16. She also told Hallman and the rest of the officers that Green had broken into her home and attacked her first and that she was trying to defend herself. FAC ¶ 16. She told Hallman and the other officers that she had ended her relationship with Green earlier that

day. FAC ¶ 16. She told the officers that she had called the police on another occasion due to Green's vandalism of Plaintiff's property. FAC ¶ 16. Hallman told Bender that Plaintiff spit something into a sink that appeared to be red in color. FAC ¶ 16.

Plaintiff alleges that the last time she called the police to have Green removed from her home, he was driven by police officers to a hotel room because he was too intoxicated to drive. FAC ¶ 17. On that occasion, Green adhered to police instruction not to return to her home. FAC ¶ 17.

Plaintiff was arrested on April 1, 2008. FAC ¶ 18. Bender placed the handcuffs on Plaintiff so tightly that she had red marks on her wrists the next day. FAC ¶ 18. Plaintiff was taken to jail, booked and had to post bail. FAC ¶ 18. On April 2, 2008, as a result of her emotional stress, Plaintiff took an overdose of elavil and was taken to the emergency room at Kaiser Hospital in Vallejo and put on a California Welfare and Institutions section 5150 hold.

**LEGAL STANDARD**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal

quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**DISCUSSION**

**Defendant Officers Garth and Brook**

Plaintiff's first amended complaint contains allegations against Napa Police Officers Garth and Brook. Counsel for the City Defendants stated at the hearing that there are no officers by those names with the Napa Police Department. Accordingly, no later than October 30, 2009, the City Defendants shall provide information to Plaintiff that is sufficient to support their statement that there were no police officers named Garth or Brook on the Napa police force on April 1, 2008. If there are no such officers, Plaintiff should amend her complaint accordingly.

**First claim for violation of 42 U.S.C. § 1983**

Plaintiff's first claim alleges that Defendants violated Plaintiff's constitutional rights: (1) to be free from unreasonable search and seizure; (2) to be free from excessive force; (3) to substantive due process; (4) to equal protection; and (5) to be free from conspiracy. The City Defendants move to dismiss all aspects of the § 1983 claim. Defendant Hallman concedes that Plaintiff can maintain a § 1983 claim based on unreasonable search and seizure as well as excessive force, but argues that the § 1983 claim based on substantive due process, equal protection and conspiracy should be dismissed.

**Bystander liability**

City Defendants first argue that Plaintiff's allegations against Officers Cole and Hibbs contained in the first claim are not sufficiently specific. Rather than include specific allegations in the first amended complaint against Cole and Hibbs, Plaintiff makes allegations against "Defendant Officers." Plaintiff argues that the pleading against these officers is sufficient because the officers were present at the scene but failed to intervene against the violation of Plaintiff's constitutional rights.

Plaintiff cites Rutherford v. City of Berkeley, 780 F.2d 1444 (9th Cir. 1986) for the proposition that even where an officer does not actively participate in the specific actions giving rise to the claim, the officer's presence and inactivity at the scene may result in liability. Rutherford,

4

however, is inapposite. In <u>Rutherford</u>, the plaintiff could not say whether two particular officers punched or kicked him, but did testify that those officers were among the officers immediately surrounding him when he was being beaten. The officers conceded that they were among the officers who detained and arrested the plaintiff, but denied beating him. The court reversed the directed verdict with respect to those officers and remanded, stating: "From this evidence, a jury could reasonably infer that the named officers were participants in punching or kicking Rutherford." <u>Rutherford</u>, 780 F.2d at 1448. As the Ninth Circuit explained in <u>Jones v. Williams</u>, 297 F.3d 930, 935 (9th Cir. 2002):

> <u>Rutherford</u> does not suggest, as would Jones's proposed instruction, an inference of individual liability of individual officers based on merely being present at the scene of the search. In <u>Rutherford</u>, there was substantial evidence of individual liability of the defendant officers beyond their merely being present. The officers' testimony was that they participated in detaining, arresting and handcuffing Rutherford. Rutherford's testimony was that he saw each of their faces when he was being beaten. The officers were integral participants in the alleged unlawful act, not simply present outside the Berkeley residence hotel.

Here, by contrast, the complaint is devoid of any allegations about the specific conduct of Officers Cole and Hibbs during the events at Plaintiff's home on April 1, 2008.

In arguing that the general allegations against Defendant Officers are sufficient to state a claim against Cole and Hibbs, Plaintiff also relies on the theory that police officers have a duty to intervene when fellow officers violate constitutional rights of a citizen and can be held liable under § 1983 where they had a realistic opportunity to intercede, but failed to do so. <u>Cunningham v. Gates</u>, 229 F.3d 1271, 1289 (9th Cir. 2000); <u>U.S. v. Koon</u>, 34 F.3d 1416, 1447, n. 25 (9th Cir. 1994). In <u>Cunningham</u>, police officers shot several criminal suspects in separate incidents. The Ninth Circuit concluded that officers who were not present at the time of the shootings could not be liable under § 1983 for failure to intercede, and also that the non-shooting officers who were present had no realistic opportunity to intercede, according to the undisputed evidence, so they could not be liable either. These cases addressed uses of force -- shooting and beating -- much more severe than the overly tight handcuffs alleged here. Further, here, Plaintiff has not state a claim for failure to intercede because the only excessive force allegation is that Bender applied handcuffs too tightly, and there are no allegations that Officers Cole or Hibbs participated in or witnessed the handcuffing, much less could see that it was done too tightly.

5

Similarly, Plaintiff has not adequately pled that Cole and Hibbs were integral participants in the incident. The Ninth Circuit recently stated:

> In <u>Chuman v. Wright</u>, 76 F.3d 292 (9th Cir.1996), we rejected "the 'team effort' standard [that] allows the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct." 76 F.3d at 295. In that case, we held that a police officer's "[b]eing a mere bystander [to his colleagues' conduct] was insufficient" to support § 1983 liability. <u>Id.</u> at 294.
>
> Hopkins seeks to distinguish <u>Chuman</u> by relying on the "integral participant" rule, which, as its name suggests, extends liability to those actors who were integral participants in the constitutional violation, even if they did not directly engage in the unconstitutional conduct themselves. However, this rule requires more participation and support on the part of a particular defendant than the undisputed facts in this case show Officer Nguyen to have provided. Under the integral participant rule, "an officer who does not enter an apartment, but stands at the door, armed with his gun, while other officers conduct the search, can ... be a 'full, active participant' in the search" and therefore can be subject to § 1983 liability. <u>Boyd v. Benton County</u>, 374 F.3d 773, 780 (9th Cir.2004) (emphasis added). Each of the cases cited in <u>Boyd</u> in which the "integral participant" rule was deemed satisfied involved officers who "provided armed backup during an unconstitutional search." <u>Id.</u> While the "integral participant" rule may extend liability beyond simply those officers who provide "armed backup," it is clear that an officer who waits in the front yard interviewing a witness and does not participate in the unconstitutional search in any fashion cannot be held liable under <u>Chuman</u>.

<u>Hopkins v. Bonvicino</u>, 573 F.3d 752, 770 (9th Cir. 2009); <u>see also</u> <u>Jones v. Williams</u>, 297 F.3d 930, 935 (9th Cir. 2002) ("In <u>Chuman v. Wright</u>, we defined the contours of individual liability further when we stated a plaintiff could not hold an officer liable because of his membership in a group without a showing of individual participation in the unlawful conduct."); <u>Blankenhorn v. City of Orange</u>, 485 F.3d 463, 481 n. 12 (9th Cir. 2007) ("'"[I]ntegral participation" does not require that each officer's actions themselves rise to the level of a constitutional violation.' But it does require some fundamental involvement in the conduct that allegedly caused the violation.") (internal citations omitted).

There are no allegations that Cole or Hibbs did anything at the scene sufficient to show integral participation under <u>Chuman</u>, or that they knew there was a constitutional violation occurring that they had a reasonable opportunity to prevent that would be sufficient to state a claim under <u>Rutherford</u> or <u>Koon</u>. Plaintiff must make more specific allegations against these particular officers. Accordingly, the City Defendants' Motion to Dismiss Plaintiff's § 1983 claim against Officers Cole and Hibbs is granted with leave to amend.

**Excessive force**

1    "It is well-established that overly tight handcuffing can constitute excessive force." <u>Wall v.
2    County of Orange</u>, 364 F.3d 1107, 1112 (9th Cir. 2004).  Here, Plaintiff alleges that Bender applied
3    the handcuffs so tightly that she had red marks on her wrists the next day.  FAC ¶ 18.  Plaintiff's
4    allegation is sufficient to state a claim for excessive force against Bender.  However, there are no
5    allegations that any other police officer used excessive force against Plaintiff or could observe that
6    Bender was using excessive force in placing handcuffs on Plaintiff.

7    Accordingly, the City Defendants' Motion to Dismiss the excessive force claim is denied as
8    to Bender and is granted with leave to amend as to Cole and Hibbs.  Hallman acknowledges that the
9    excessive force claim against him survives a motion to dismiss.  <u>See</u> Hallman's Reply in Support of
10   Mot. to Dismiss at 2.

11   **Substantive due process**

12   Plaintiff alleges that her substantive due process rights were violated when Defendants
13   falsely arrested her and failed to establish probable cause for her arrest.  "'As a general matter, the
14   Court has always been reluctant to expand the concept of substantive due process because the
15   guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'  The
16   protections of substantive due process have for the most part been accorded to matters relating to
17   marriage, family, procreation and the right to bodily integrity."  <u>Albright v. Oliver</u>, 510 U.S. 266,
18   271-72 (1994).  Further, "[w]here a particular Amendment 'provides an explicit textual source of
19   constitutional protection' against a particular sort of government behavior, 'that Amendment, not the
20   more generalized notion of "substantive due process," must be the guide for analyzing those
21   claims.'"  <u>Id.</u> at 273 (quoting <u>Graham v. Connor</u>, 490 U.S. at 394).  In <u>Graham</u>, the Court held that
22   "*all* claims that law enforcement officers have used excessive force - deadly or not - in the course of
23   an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth
24   Amendment and its 'reasonableness' standard, rather than under a 'substantive due process'
25   approach."  <u>Graham</u>, 490 U.S. at 395.

26   Here, Plaintiff alleges Defendants improperly failed to remove Green from her home despite
27   the fact that she told them that her home had been burglarized, failed to determine where Green
28   parked his car, failed to check whether Green had any personal items at the home, relied only on

7

Green's statement that he had been assaulted by Plaintiff, and then falsely arrested Plaintiff. See FAC ¶ 18. The Fourth Amendment right to be free from unreasonable seizure provides an "explicit textual source of constitutional protection" for the conduct that forms the basis for Plaintiff's substantive due process claim, that is, her arrest without probable cause.

The cases cited by Plaintiff to support a substantive due process claim arose in other circuits and do not apply a substantive due process approach. See Kingsland v. City of Miami, 382 F.3d 1220, 1228-29 (11th Cir. 2004) ("Appellant argues that the district court erroneously concluded as a matter of law that the officers conducted a constitutionally-sufficient investigation, thereby removing the inquiry from a jury. She contends that, objectively, officers should not be permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon. We agree."); BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986) (" A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued especially when, as here, it is unclear whether a crime had even taken place.").

Plaintiff argued at the hearing that a substantive due process claim exists for victims of domestic violence who are improperly arrested, like Plaintiff. However, Plaintiff could not provide any authority for her argument, and the Supreme Court has cautioned against expanding substantive due process claims, particularly where a Fourth Amendment claim exists based on the same conduct, as here. Accordingly, Plaintiff's substantive due process claim is foreclosed by Albright and Graham and is dismissed.

**Conspiracy**

All Defendants move to dismiss Plaintiff's conspiracy claim. In order to support the claim that Defendants have engaged in a conspiracy against her, Plaintiff must allege facts showing "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another." Hampton v. Hanrahan, 600 F.2d 600, 620-24 (7th Cir.1979), overruled on other grounds, Hanrahan v. Hamilton, 446 U.S. 754 (1979). The Ninth Circuit has stated:

> To establish the defendants' liability for a conspiracy, a plaintiff must demonstrate the existence of "'an agreement or 'meeting of the minds' to violate constitutional rights.'" [citations omitted] The defendants must have, "by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in damage." [citations omitted] Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants. [citation omitted] For example, a showing that the alleged conspirators have committed acts that "are unlikely to have been undertaken without an agreement" may allow a jury to infer the existence of a conspiracy. [citation omitted] Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, "so long as there is a possibility that the jury can 'infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached a understanding' to achieve the conspiracy's objectives." [citations omitted] "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." [citation omitted].

Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999).

Plaintiff alleges that Green conspired with "Defendant Officers" and Hallman to deprive Plaintiff of her constitutional right to be free from unreasonable search and seizure. See FAC ¶ 25(f). She alleges that the Defendant Officers and Green agreed to fabricate criminal charges against Plaintiff by constructing a false story about what had happened that was "designed to conceal Green's criminal, civil and moral responsibility for breaking into Plaintiff's home." FAC ¶ 25(f). She alleges that Bender, Hallman and Green repeated the false story in official documents and reports. Id.

Plaintiff's allegations of a conspiracy between Bender, Hallman and Green are sufficient to state a claim. However, the only allegation bearing on the conduct of Officers Cole and Hibbs is that "Defendant Officers present during the false arrest either participated in or witnessed the false arrest and cover-up of Green's burglary and assault and did nothing to prevent it." FAC ¶ 25(f). There is no allegation, for example, that they had a meeting of the minds with Bender, Hallman and Green. This allegation against Defendant Officers is insufficient to state a claim for conspiracy against Cole and Hibbs.

The City Defendants' motion to dismiss Plaintiff's conspiracy claim is denied as to Bender, and granted with leave to amend as to Cole and Hibbs. Defendant Hallman's motion to dismiss Plaintiff's conspiracy claim is denied.

**Equal protection**

A party alleging an equal protection violation must indicate that there are at least "two

9

classifications of persons who are treated differently under the law." Christian Gospel Church v. San Francisco, 896 F.2d 1231, 1226 (9th Cir. 1990). A plaintiff must also allege discriminatory animus. Bingham v. City of Manhattan Beach, 341 F.3d 939, 948-49 (9th Cir. 2003).

The complaint alleges that Plaintiff's equal protection rights were violated because Defendants "failed to provide Plaintiff Hernandez the same protection as a victim of domestic violence as that provided to victims of nondomestic violence and burlgary victims." FAC ¶ 25(e). Plaintiff does not allege any discriminatory animus, and so Plaintiff has not adequately pled a claim for equal protection. Accordingly, the motions to dismiss the equal protection claim are granted with leave to amend.

**Second claim for municipal entity liability under Monell**

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. Monell v. Department of Social Servs., 436 U.S. 658, 690 (1978). However, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior. Board of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997); Monell, 436 U.S. at 691. Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injuries that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

> There are three ways to show a policy or practice of a municipality:
> . . . (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting Ulrich v. City and County of San Francisco, 308 F.3d 968, 984 (9th Cir.2002)).

Plaintiff alleges that the City has a pattern of "the failure to protect their citizens from persistent assaultive conduct of off-duty police officers, the sanction of unnecessary and excessive force against citizens as well as the false arrest of citizens and the protection of sober and intoxicated off-duty police officers after they have committed crimes against citizens of Napa."

10

1 FAC ¶ 28. The complaint also alleges that Green is an "off-duty police officer with the Napa State
2 Hospital." FAC ¶ 7. Plaintiff also alleges that the last time she contacted the police about Green
3 being in her home, the police drove Green to a hotel because he was too intoxicated to drive. FAC ¶
4 17. These allegations are sufficient to state a claim based on Monell. Accordingly, the City
5 Defendants' motion to dismiss Plaintiff's Monell claim is denied.

**Third claim for false arrest against all Defendants except Hallman**

Under California law, false arrest is defined as the "non-consensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however, short." Rhoden v. United States, 55 F.3d 428, 430 (9th Cir. 1995); see also Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir.1998) ("To prevail on his section 1983 claim for false arrest and imprisonment, [plaintiff] would have to demonstrate that there was no probable cause to arrest him."). Probable cause to arrest is measured by an objective standard based on the information known to the arresting officer, rather than a subjective standard that would take into account the arresting officer's actual motivations or beliefs. See Johnson v. Lewis, 120 Cal.App.4th 443, 454 (2004). An arrest is not a false arrest if the objective facts available to the officer establish probable cause that the plaintiff was committing a crime, whether or not that crime was the one that the plaintiff was cited for or was the one that was in the officer's mind. See Devenpeck v. Alford, 543 U.S. 146, 153 (2004) (holding that a warrantless arrest is reasonable if given the facts objectively known to the officer, there is probable cause to believe that a crime has been or is being committed, whether or not that crime was the offense that the officers gave as the reason for the arrest). A warrantless arrest is permissible if the officer "has probable cause to believe that an individual has committed even a very minor criminal offense in his presence . . . ." Atwater v. Lago Vista, 532 U.S. 318, 354 (2001).

Plaintiff alleges that Defendant Officers and Green entered into a conspiracy to violate Plaintiff's civil rights that led some of the co-conspirators to "forcibly seize and restrain Plaintiff Hernandez against her will and without her consent." FAC ¶ 31. Plaintiff alleges that she told Hallman and Defendant Officers that she called 911, that she called 911, that the house was hers, that Green had broken in and that he had attacked her. FAC ¶ 16. She also alleges that Hallman told Bender that Plaintiff

spit something red into the sink. FAC ¶ 16. She alleges that she was falsely arrested without probable cause for domestic violence even though Hallman and Bender overheard Green assaulting Plaintiff when they arrived at her home. FAC ¶ 18. Plaintiff was arrested and Bender placed handcuffs on her. FAC ¶ 18.

Construing the allegations in the light most favorable to Plaintiff, the allegations of false arrest are sufficient to state a claim against Bender. Therefore, Defendants' motion to dismiss is denied as to Bender. Plaintiff alleges this claim against all City Defendants. There are no allegations, however, that Chief Melton was at the scene or was part of the arrest, so the motion to dismiss is granted as to Chief Melton. Further, the City of Napa cannot be directly liable for false arrest, so the motion to dismiss is granted as to the City. In addition, although Plaintiff alleges that "Defendant Officers" participated in her false arrest, there are no specific allegations as to the participation of Officers Cole and Hibbs, so the motion to dismiss is granted with leave to amend against those officers.

**Eighth claim for assault and battery against all Defendants except for Hallman**

To bring a civil action for assault under California law, a plaintiff must demonstrate "an unlawful intent by one person to inflict immediate injury on the person of another then present." Lowry v. Standard Oil Co. of Cal., 63 Cal. App. 2d 1, 6-7 (1944). The tort protects against the invasion of the right of a person to live without being in fear of personal harm. See id. To establish liability for assault, the victim must believe that the tortfeasor's act may result in imminent contact. See Restatement (Second) of Torts § 24. Words alone are insufficient to find liability for assault. See Restatement (Second) of Torts § 31. To establish a prima facie case of battery, a plaintiff must show that the defendant engaged in an unlawful and willful use of force or violence on her. See Cal. Penal Code § 242; Restatement (Second) Torts § 18.

Plaintiff alleges that Defendant Officers and Green "entered into a conspiratorial agreement . . . to violate Plaintiff Hernandez's civil rights . . . which set in motion a series of acts which led some of the co-conspirators to place Plaintiff Hernandez in immediate fear of severe bodily harm, by physically seizing her and by battering her without any just provocation or cause when Defendant Bender arrested her and placed handcuffs on her wrists too tightly." FAC ¶ 35. She alleges that she

12

did not consent to this offensive contact.  FAC ¶ 36.

For the reasons stated above with respect to Plaintiff's claim for false arrest, the City Defendants' Motion to Dismiss Plaintiff's eighth claim is granted without leave to amend as to Chief Melton and the City of Napa, and granted with leave to amend as to Officers Cole and Hibbs. However, the allegations are sufficient to state a claim for assault and battery against Bender. Therefore, Defendants' Motion to Dismiss is denied as to Bender.

**Ninth claim for intentional infliction of emotional distress against all Defendants except Hallman**

The elements of the tort of intentional infliction of emotional distress are: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Trerice v. Blue Cross of Cal., 209 Cal.App.3d 878, 883 (1989); Davidson v. City of Westminster, 32 Cal.3d 197, 209 (1982). Outrageous conduct must "be so extreme as to exceed all bounds of that usually tolerated in a civilized society." Id.  Conduct which 'exhibits mere rudeness and insensitivity does not rise to the level required for a showing of intentional infliction of emotional distress. See Schneider v. TRW, Inc., 938 F.2d 986, 992 (9th Cir. 1991); see also, e.g., Agrawal v. Johnson, 25 Cal.3d 932, 946 (1979) ("Behavior may be considered outrageous if a defendant: (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.") (disapproved of on other grounds in White v. Ultramar, Inc., 21 Cal.4th 563 (1999)).

Plaintiff alleges that the officers engaged in extreme and outrageous conduct by ". . . entering into a conspiracy to falsely and intentionally arresting Plaintiff Hernandez while under the color of authority and then actually arresting her while releasing an intoxicated and bloody intruder who had unlawfully entered into Plaintiff's home and assaulted and battered her without legal justification or excuse. . . ." FAC ¶ 39.  These allegations, which also form the basis for Plaintiff's conspiracy and false arrest claim, are sufficient to state a claim for intentional infliction of emotional distress against Bender.  Therefore, the City Defendants' Motion to Dismiss is denied with respect to the ninth claim

against Officer Bender. However, for the reasons stated above with respect to Plaintiff's false arrest claim, the City Defendants' Motion to Dismiss Plaintiff's ninth claim is granted without leave to amend as to Chief Melton and the City of Napa, and granted with leave to amend as to Officers Cole and Hibbs.

**Tenth claim for negligence against all Defendants except Hallman**

Plaintiff alleges that Defendant Officers were subject to a duty of care "to avoid causing unnecessary physical harm and distress to citizens in the exercise of their police function," and that the officers' conduct did not comply with the standard of care when they conspired with each other to deprive her of her constitutional rights. FAC ¶ 41. This allegation, coupled with Plaintiff's allegations described above with respect to assault and battery, false arrest, intentional infliction of emotional distress and conspiracy, show that Plaintiff has sufficiently stated a claim for negligence against Bender. Therefore, Defendants' Motion to Dismiss Plaintiff's negligence claim against Bender is denied.

However, Plaintiff fails to make any specific allegations against Chief Melton, who was not alleged to have been at the scene on April 1, 2008. Therefore, the City Defendants' Motion to Dismiss is granted as to Chief Melton. Further, there is no statutory basis for a direct claim against a public entity for negligence, so the claim against the City of Napa is dismissed. See, e.g., Munoz v. City of Union City, 120 Cal.App.4th 1077, 1111-12 (2004) (". . . '[a] public entity is not liable for an injury,' '[e]xcept as otherwise provided by statute.' ( Gov.Code, § 815.) In other words, direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714.'") (quoting Eastburn v. Regional Fire Protection Authority, 31 Cal.4th 1175, 1183 (2003)). Although Plaintiff's allegations are made against all of the police officers, for the reasons set forth above, those general allegations are insufficient to state a claim against Cole and Hibbs. Therefore, the City Defendants' Motion to Dismiss is granted with leave to amend against Cole and Hibbs.

**Eleventh claim for negligent selection, training, retention, supervision, investigation and discipline against all Defendants except Hallman**

There are no allegations that Officers Bender, Cole and Hibbs are involved in supervisory activities, so the City Defendants' Motion to Dismiss the eleventh claim is granted as to those

14

Defendants. With respect to the City of Napa and Chief Melton, Plaintiff alleges that they had a "mandatory duty of care to properly and adequately select, train, retain, supervise, investigate and discipline the Defendant officers . . . ." FAC ¶ 43. Plaintiff alleges that the City and Chief Melton have been "given notice of repeated occasions of a pattern of ongoing constitutional violations and practices by Defendants Officers . . . through the failure to protect their citizens from the persistent assaultive conduct of off-duty police officers, unnecessary and excessive force against citizens, and false arrests of citizens by protecting sober and intoxicated off-duty police officers after they have committed crimes against citizens of the city of Napa." FAC ¶ 44. Further, Plaintiff alleges that the City and Chief Melton have notice of the "unwritten policy, custom or practice of violating domestic violence victims' rights to equal protection of the laws on the ground that they have repeatedly failed to provide the same law enforcement protection to victims of domestic violence as to that provided to victims of nondomestic violence and burglary investigations." FAC ¶ 44. Plaintiff alleges that the City and Chief Melton demonstrated deliberate indifference to this pattern and practice. FAC ¶ 45. Further, Plaintiff alleges that the City and Chief Melton breached their duty to the citizens by failing to adequately train and supervise police officers. FAC ¶ 46.

There is no direct liability for negligent supervision by a public entity. See de Villers v. County of San Diego, 156 Cal.App.4th 238, 252-53 (2007). The de Villers court stated:

> We find no relevant case law approving a claim for direct liability based on a public entity's allegedly negligent hiring and supervision practices. Instead, the court in Munoz v. City of Union City (2004) 120 Cal.App.4th 1077, 16 Cal.Rptr.3d 521 concluded no statutory basis for such a claim existed. In Munoz, an officer shot and killed a victim and the officer and his governmental employer were sued. The jury apportioned 50 percent fault to the officer, 45 percent fault to the city, and 5 percent to the victim. The Munoz court, applying the framework articulated in Eastburn, concluded the city could be vicariously liable for the 50 percent portion attributed to its officer-employee, but that Eastburn barred liability for the 45 percent portion of fault attributed to the city based on its alleged negligence in hiring, training and supervising its officers. (Munoz, at pp. 1110-1115, 16 Cal.Rptr.3d 521.) Here, as in Munoz, there is no statutory basis for declaring a governmental entity liable for negligence in its hiring and supervision practices and, accordingly, plaintiffs' claim against County based on that theory is barred by Eastburn and Zelig."

de Villers, 156 Cal.App.4th at 252-53. Therefore, deVillers bars Plaintiff's claim against the City of Napa for negligent supervision practices.

Further, Munoz bars a claim of negligent supervision against Chief Melton. Munoz, 120 Cal.App.4th at 1112-13 (treating the public entity and the police chief the same is dismissing the

15

direct negligent supervision claim). Therefore, the City Defendants' Motion to Dismiss Plaintiff's eleventh claim is granted without leave to amend.

**Twelfth claim for respondeat superior against the City of Napa and Chief Melton**

"'The doctrine of respondeat superior imposes vicarious liability on an employer for the torts of an employee acting within the scope of his or her employment, whether or not the employer is negligent or has control over the employee.'" Jeewarat v. Warner Bros. Entertainment Co., 177 Cal.App.4th 427, 434 (2009) (quoting Baptist v. Robinson, 143 Cal.App.4th 151, 160 (2006)). Plaintiff alleges that the Defendant Officers committed the acts described in the complaint during the course and scope of their employment and that therefore, the City and Chief Melton are liable for Plaintiff's injuries pursuant to respondeat superior. FAC ¶¶ 49-50. To the extent that Defendants move to dismiss this claim, that motion is denied on the grounds that at least some of Plaintiff's allegations are sufficient to state a claim.

**CONCLUSION**

The City Defendants' and Defendant Hallman's Motions to Dismiss are granted in part and denied in part.

**IT IS SO ORDERED.**

Dated: October 22, 2009

ELIZABETH D. LAPORTE
United States Magistrate Judge