IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ HERNANDEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF NAPA, et al.,<br><br>    Defendants.<br>_____/ | No. C-09-02782 EDL<br><br>**ORDER REGARDING IN CAMERA REVIEW OF CALIFORNIA DEPARTMENT OF MENTAL HEALTH'S DOCUMENTS** |

**I.  Background**

This is a § 1983 action against the City of Napa and various police and sheriff's officers arising from Plaintiff's arrest during a domestic violence incident at her home. On April 1, 2008, Plaintiff and Defendant Green, who was at the time a Napa State Hospital Police officer, were involved in an altercation which resulted in the break-up of their romantic relationship. That evening, when Plaintiff returned home from work, Mr. Green was in her house and they had a physical altercation during which Plaintiff called 911.  As soon as the Napa officers entered Plaintiff's home, they separated Plaintiff and Green and Plaintiff was escorted into her room.  Deputy Sheriff Hallman asked if she was okay, and she told Hallman and other officers that Green had broken into her home and attacked her first and that she was trying to defend herself.  Thereafter, Plaintiff was arrested. Plaintiff alleges that Green conspired with Defendant police officers and Hallman to deprive her of her civil rights. On April 2, 2008, as a result of her emotional stress, Plaintiff took an overdose of

Elavil and was taken to the emergency room at Kaiser Hospital in Vallejo and put on a California Welfare and Institutions § 5150 hold. Plaintiff's Second Amended Complaint makes claims against the City and County of Napa, Donald Green, as well as a deputy sheriff and various officers involved in her arrest, for the following: 42 U.S.C. § 1983, Illegal Seizure, Excessive Force, Conspiracy to Violate Plaintiff's Civil Rights, Monell Liability, False Arrest and Imprisonment, Assault & Battery, Intentional Infliction of Emotional Distress, Negligence, and Respondeat Superior.

Ms. Hernandez subpoenaed the personnel records of former peace officer Donald Green from his employer Napa State Hospital, which is administered by the California Department of Mental Health ("DMH"). DMH filed a motion requesting *in camera* review of the subpoenaed law enforcement personnel records and the issuance of a protective order if information and/or documents are disclosed. DMH argued that production would impose an undue burden and expense on DMH and would require the production of privileged or other protected matter. DMH therefore sought an *in camera* review of the materiality and relevance of the information and documents contained in such records. Plaintiff did not oppose the motion. According to DMH's unopposed motion, Plaintiff agreed to limit the scope of the subpoena to the DMH's Internal Affairs investigation of the April 1, 2008 incident and the citizen's complaint submitted to DMH against Mr. Green as a result of the incident. On June 17, 2010 this Court granted DMH's unopposed motion for *in camera* review. On June 29, 2010, this Court received the records for review. Having reviewed the documents submitted by DMH, the Court hereby Orders that most of the documents to be produced, subject to a protective order and after redacting all personal information such as home addresses and telephone numbers, social security numbers, and other information relating to individuals unrelated to this lawsuit. However, the Court finds that some of the documents submitted appear to be irrelevant to the issues raised by Plaintiff's lawsuit in this Court and therefore need not be produced.

**II.   Standard of Review**

Pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), the Court "must" quash or modify a subpoena that requires the disclosure of privileged or other protected matter, or subjects a person to

undue burden. DMH's motion argued that the privacy interest in police records such as those in question must be balanced against the interests of the party seeking discovery to determine if a right to privacy exists. DMH relied on Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995), which articulated the standard as follows:

> Federal common law recognizes a qualified privilege for official information. Kerr v. U.S. Dist. Ct. for the Northern Dist., 511 F.2d 192, 198 (9th Cir. 1975). In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege. Kelly v. City of San Jose, 114 F.R.D. at 660; Miller v. Pancucci, 141 F.R.D. at 300; Hampton v. City of San Diego, 147 F.R.D. at 230-31; Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033-34 (9th Cir.1990), cert den., 502 U.S. 957, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991). In the context of civil rights suits against police departments, this balancing approach should be "moderately pre-weighted in favor of disclosure." Kelly, 114 F.R.D. at 661.
>
> . . .
>
> If the party asserting the privilege meets the threshold requirement, the court will conduct a balancing analysis that considers, but is not limited to, the following factors: (1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case. Kelly v. City of San Jose, 114 F.R.D. at 663 (citing Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa.1973)).

Id. at n.4.

**III.   Documents Provided For In Camera Review**

DMH has submitted its records pertaining to Donald Green regarding incidents that occurred between Mr. Green and Ms. Hernandez. After reviewing the records, the Court finds as follows:

1.   Report of Investigation: This is a 15-page report of an employee misconduct investigation based on Ms. Hernandez' complaints against Mr. Green at various times between April 1 and July 14, 2008. While only the April 1 incident relating to Ms. Hernandez's arrest is directly at issue in this lawsuit, the entire report is relevant. The other incidents in the report relate back to the April 1

3

incident and the report was based on: a) attorney Tim Pori's citizen's complaint on behalf of Ms. Hernandez, b) transcripts from public TRO and PRO superior court hearings as a result of a claim filed by Ms. Hernandez following the April 1 incident, c) an email written by Ms. Hernandez to her supervisor complaining that Mr. Green was in violation of the TRO, and 4) andinterview with Ms. Hernandez in September 2008.  The first two sources are public documents so privacy interests do not apply, and the second two are statements by Plaintiff that do not impact the privacy rights of defendants or third parties.  Given that the report not only summarizes all of the factual information given to investigators but also makes credibility determinations and conclusions based on those facts, it runs some risk of chilling government self-evaluation and consequent program improvement, but this risk is outweighed by the value of this information to Plaintiff's case and the fact that she cannot get this information elsewhere.  Therefore, this document shall be produced in its entirety subject to a protective order.

2.      Persons Involved List:  This is a two-page list of people involved in the investigation of Ms. Hernandez's claims against Mr. Green.  It includes names and titles, but no other identifying information.  While there is some risk that identifying the witnesses in this way could discourage them from giving information in the future, all of the witnesses on the list are government employees or parties or their lawyers, and any risk is outweighed by the value of the witness list to Plaintiff. Therefore, this document shall be produced in its entirety subject to a protective order.

3.      Report of Investigation/Investigative Details: This is a 24-page document detailing all of the interviews conducted in connection with Ms. Hernandez's claims against Mr. Green. This report provides more detail than either of the two previously discussed documents as to what each individual witness said during his or her interview.  Disclosing this document to the public could discourage citizens from giving the government information and could potentially have a negative impact on the interviewees, and for this reason the Court hereby Orders the names of the individual interviewees to be redacted. On the other hand, the investigative details appear to be neutral factual summaries of what was said during each interview, not an internal evaluation of the merits of the claims, so there is no risk of chilling government self-evaluation by disclosing these documents.  In sum, this document shall be produced subject to a protective order, with the names of the individual

4

interviewees redacted.

4. Documents Reviewed and Attached: This is a two-page list of documents reviewed during the investigation, listed as Exhibits A-R.  There is nothing confidential about this document and it shall be produced subject to a protective order.  The underlying exhibits listed on the document have also been provided and will be discussed in turn.

5. Investigative Details/Document Reviewed: This is a 13-page document summarizing the documents, listed as Exhibits A-O reviewed during the investigation.  Each of these underlying exhibits will be addressed in turn, and the Court's opinions as to what portions of this document should be produced mirror its opinion of the underlying documents.

    A. Donald Green's citizen's complaint: This relates indirectly to the allegations of the complaint, in that Mr. Green complains that following the April 1incident Ms. Hernandez was harassing him and subjecting him to a hostile work environment.  This appears to be relevant to defendants' defenses, and shall be produced subject to the protective order.  However, Mr. Green's personal information such as his home phone number and address must be redacted.

    B. Attorney Tim Pori's citizen's complaint on behalf of Ms. Hernandez:  This relates directly to the allegations of the complaint and shall be produced subject to the protective order. However, Ms. Hernandez's personal information such as her home phone and address must be redacted.

    C. City of Napa Confidential Police Report: This relates directly to the allegations of the complaint and shall be produced subject to the protective order.  However, Ms. Hernandez and Mr. Green's personal information such as home phone, address, driver's license number, etc.must be redacted.

    D. Restraining Order

    E. Notice of Motion and Motion to Produce

    F. Temporary Restraining Order

    G. Transcript of hearing on restraining order

    H. Second transcript of hearing on restraining order

All of these documents appear to have been filed in Napa County Superior Court and therefore are publicly available, and likely already in possession of all parties. While the documents relate to court proceedings that occurred after the April 1 incident, the evidence presented for purposes of the restraining orders was primarily about the April 1 incident. Therefore, the documents shall be produced, but do not need to be produced subject to a protective order because they are already publicly available. Also, the Court notes that a number of witnesses who were interviewed as part of the police department's internal investigation (see no. 3 above) also gave testimony at these hearings. Therefore, it appears that their views have already been made public, so any privacy interests in their interviews are diminished.

I. Employee Relations File Re: Mr. Green and Ms. Hernandez: This exhibit contains a letter from Ms. Hernandez to a superior detailing her concerns for her safety at work due to Mr. Green's presence, a copy of her TRO, notes from a meeting with Ms. Hernandez, Mr. Green's citizen's complaint and response thereto, and Mr. Green's timesheet for April 2008. All of these items are relevant to this case and should be produced subject to a protective order. However, this exhibit also contains internal emails discussing Ms. Hernandez and Mr. Green's general ongoing workplace issues following the April 1 incident. None of these emails mentions the April 1 incident or otherwise relates to the allegations of the complaint. Therefore these emails are irrelevant and need not be produced.

J. Mr. Green's Answer to the Temporary Restraining Order: This document appears to have been filed in Napa County Superior Court and therefore is publicly available, and likely already in possession of all parties. While the answer relates to court proceedings that occurred after the April 1 incident, Mr. Green's statement specifically discusses the April 1 incident. Therefore, the document shall be produced, but does not need to be produced subject to a protective order because the answer was publicly-filed.

K. Mr. Green's Work Hour Documents: These documents contain a summary of Mr. Green's hours worked from April 1 through June 30, 2008, as well as daily time records for Mr. Green that also include time records for a number of other employees. The Court finds that only Mr. Green's time records for April 1, 2008 are relevant and should be produced subject to a protective

order, and even those must be heavily redacted to omit information relating to other employees.

L. Ms. Hernandez's Work Hour Documents: These documents contain a summary of Ms. Hernandez and Mr. Green's work hours from April 1 through June 30, 2008, as well as some time records for Ms. Hernandez. Ms. Hernandez's time records appear to be irrelevant to this case and need not be produced.

M. Sheriff Deputy Hallman's April Audio Recording: This is directly relevant to this case and must be produced subject to a protective order.

N. This is a CD of maps and photos showing the relationship between Mr. Green and Ms. Hernandez's work stations. This information is irrelevant to Ms. Hernandez's claims in this case and need not be produced.

O. Redacted NHS Workplace Security Assessment Committee Meeting Notes from June 13 and August 15, 2008: These notes have been redacted to exclude information relating to other incidents unrelated to Mr. Green or Ms. Hernandez. The visible portions discuss the April 1 incident, but are also focused on the ongoing workplace issues relating to Mr. Green and Ms. Hernandez which are not relevant to Ms. Hernandez's claims. While some but not all of the notes are relevant, but it would be difficult to redact irrelevant information. Therefore, on balance, the notes shall be produced in their current redacted form.

P. This exhibit contains a "transportation schedule" for June 11, as well as incident details for June 11. These documents are irrelevant to any of Ms. Hernandez's claims and need not be produced.

Q/R: These exhibits contain audio recording of investigation interviews of Ms. Hernandez and Mr. Green. These interviews are relevant to Ms. Hernandez's claims and shall be produced.

**IT IS SO ORDERED.**

Dated: July 6, 2010

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge