IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ HERNANDEZ,<br><br>        Plaintiff,<br><br>  v.<br><br>CITY OF NAPA, et al.,<br><br>        Defendants.<br>_____/ | No. C-09-02782 EDL<br><br>**ORDER REGARDING IN CAMERA REVIEW OF COUNTY OF NAPA'S DOCUMENTS RELATING TO DEPUTY HALLMAN** |

**I.  Background**

This is a § 1983 action against the City of Napa and various police and sheriff's officers arising from Plaintiff's arrest during a domestic violence incident at her home. On April 1, 2008, Plaintiff and Defendant Green, who was at the time a Napa State Hospital Police officer, were involved in an altercation which resulted in the break-up of their romantic relationship. That evening, when Plaintiff returned home from work, Mr. Green was in her house and they had a physical altercation during which Plaintiff called 911. When Napa officers arrived at Plaintiff's house, they could overhear Green assaulting Plaintiff. As soon as the officers entered Plaintiff's home, they separated Plaintiff and Green and Plaintiff was escorted into her room.  Deputy Sheriff Hallman asked if she was okay, and she told Hallman and other officers that Green had broken into her home and attacked her first and that she was trying to defend herself.  Thereafter, Plaintiff was arrested.  Plaintiff alleges that Green conspired with Defendant police officers and Hallman to deprive her of her civil

rights. On April 2, 2008, as a result of her emotional stress, Plaintiff took an overdose of elavil and was taken to the emergency room at Kaiser Hospital in Vallejo and put on a California Welfare and Institutions § 5150 hold.

Specific to Deputy Hallman, Plaintiff alleges in its Second Amended Complain that Deputy Hallman, in both his official and individual capacity, violated Plaintiff's Constitutional rights. Plaintiff alleges that despite her claims that her home was burglarized and her requests for Deputy Hallman to remove Mr. Green from her home, Deputy Hallman and other officers falsely arrested her without a warrant or probable cause.

Plaintiff also alleges that Deputy Hallman conspired with the other officers present to deprive Plaintiff of her rights. Specifically, Plaintiff alleges that Deputy Hallman and the other officers constructed a false story in which Mr. Green would claim to be a battery victim, while Plaintiff was arrested and Mr. Green was driven elsewhere. Further, Plaintiff claims that Deputy Hallman perpetuated this false story in official documents and reports and in doing so denied her right to be free from unreasonable seizure and excessive force.

Plaintiff propounded a Rule 34 Request for Production of Documents on Deputy Hallman, which produced no documents. Plaintiff then subpoenaed the personnel records of Deputy Hallman from his employer, the County of Napa, again producing no documents. This Court held a hearing on June 22, 2010 to consider Plaintiff's Motion to Compel Further Discovery from Defendant Hallman and to Compel Production of Records Subpoenaed from the County of Napa. The Court denied the motion for failure to meet and confer, but agreed to conduct an in camera review of certain documents in dispute. The Court received the documents in dispute on approximately July 7, 2010. Thereafter the parties submitted a stipulated protective order to govern the production of confidential documents in this case, and the Court entered the Order on July 26, 2010.

Having reviewed the documents submitted by the County of Napa, the Court hereby Orders that some of the documents, as specified below, be produced, subject to the stipulated protective order and after redacting all personal information such as home addresses and telephone numbers, social security numbers, and other information relating to individuals unrelated to this lawsuit. However, the Court finds that the remaining documents, as specified below are irrelevant to the

2

issues raised by Plaintiff's lawsuit or that the privacy interests implicated by the documents outweighs Plaintiff's interest in the information in question, and therefore need not be produced.

## II.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), the Court "must" quash or modify a subpoena that requires the disclosure of privileged or other protected matter, or subjects a person to undue burden.  Generally the privacy interest in police records such as those in question must be balanced against the interests of the party seeking discovery to determine if a right to privacy exists. Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995), articulates the following standard:

> Federal common law recognizes a qualified privilege for official information. Kerr v. U.S. Dist. Ct. for the Northern Dist., 511 F.2d 192, 198 (9th Cir. 1975). In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege.  Kelly v. City of San Jose, 114 F.R.D. at 660; Miller v. Pancucci, 141 F.R.D. at 300; Hampton v. City of San Diego, 147 F.R.D. at 230-31; Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033-34 (9th Cir.1990), cert den., 502 U.S. 957, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991).  In the context of civil rights suits against police departments, this balancing approach should be "moderately pre-weighted in favor of disclosure." Kelly, 114 F.R.D. at 661.
>
> . . .
>
> If the party asserting the privilege meets the threshold requirement, the court will conduct a balancing analysis that considers, but is not limited to, the following factors: (1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case. Kelly v. City of San Jose, 114 F.R.D. at 663 (citing Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa.1973)).

Id. at n.4.

## III.  Documents Provided For In Camera Review

The County of Napa has submitted its personnel and internal affairs documents regarding Deputy Hallman.  After reviewing the records, the Court finds as follows:

3

**A.    Personnel History Form (CON000002-6):**

These include standard employment forms and the oath of office Deputy Hallman took pursuant to his employment as a Deputy Sheriff. These documents are irrelevant to the current dispute and need not be produced.

**B.    Automobile Related Incidents (CON000008-20):**

These include reports regarding various minor automobile-related incidents involving Deputy Hallman. Deputy Hallman's driving record is not relevant to any of the claims brought against him, and these documents need not be produced.

**C.    Commendations, Citations, Letters, Achievements, Suspensions, Evaluations (CON000021-114):**

1.    Certain of these documents include "Employee Performance Appraisal" forms filled out by Deputy Hallman's supervisor, evaluating Deputy Hallman's performance of his duties as well as documenting objectives and training completed. These "Employee Performance Appraisal" forms, which include evaluations of Deputy Hallman's contact with victims, arrests and investigations, are relevant to the charges brought against him.  These documents illustrate Deputy Hallman's on the job performance and training, which help to give relevant context to the claims brought against him. Since Plaintiff alleges that her arrest was inappropriate, Deputy Hallman's general arrest performance is relevant.  Courts will permit the discovery of police personnel files in civil rights cases because the "information may lead to evidence of a continuing course of conduct reflecting malicious intent," or "reveal the defendant officers' patterns of behavior, as well as [their agency's] response to such behavior." Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995).  Further, since these reports have been given to and reviewed with Deputy Hallman, it is unlikely that their disclosure would have a chilling effect on the police department's self-evaluation and consequent program improvement ability.  Thus, the "Employee Performance Appraisal" forms (CON000021-27, 33-44, 48-53, 55-61, 65-67, 72-76, 85-89, 93-95, and 99-114) shall be produced subject to the protective order.

2.    This group of documents also includes letters from other police departments, organizations and individual citizens commending Deputy Hallman for the assistance he has

4

provided. These documents illustrate Deputy Hallman's on the job performance, which help to give relevant context to the claims brought against him. To the extent that the privacy interests of third parties are implicated, the County of Napa shall take care to redact <u>all</u> identifying information of third parties from the documents and the documents will be governed by a protective order. Documents labeled as CON000028-32, 45-47, 54, 62-64, 68-71, 79-84, 91-92, and 96-98 shall be produced subject to the protective order and with all personal and identifying information of third parties redacted.

       3.       This group of documents also contains Notices of Suspension relating to violations of police policies and individual rights, which are relevant given the Constitutional violation claims against Deputy Hallman. Plaintiff's interest in the documents outweighs Deputy Hallman and the County's privacy interest in them. The Notices of Suspension (CON000077-78 and CON000090) shall be produced subject to the protective order.

    **D.**    **Training, Education, P.O.S.T. Standing (CON000115-194):**

       1.       This group of documents includes certificates of training programs completed. The majority of the documents relate to training programs in areas of gang prevention, narcotics, traffic, crime prevention and others areas which are not relevant to this specific incident or the claims raised against Deputy Hallman. Therefore documents labeled as CON000115, 118-120, 123-130, 133-139, 141-151, 153-155, 157-159, and 169 need not be produced. However, documents relating to training programs in areas touching upon this specific incident or the claims raised against Deputy Hallman, such as "arrest and control," field training, burglary, "under the influence" and basic and intermediate certificate courses, are relevant and should be produced. Therefore, documents labeled as CON000116-117, 121-122, 131-132, 140, 152, 156, 168, and 170-171 shall be produced subject to a protective order. Additionally, the "Training History List," which includes police training courses taken at a local community college, indicates that Deputy Hallman took courses in "Arrest and Control," "Field Training Officer Update," "Drug Influence," and "Basic Academy" which likely involve the skills implicated by this case. Thus, documents labeled CON000165-169 and 179-194 shall also be produced subject to the protective order.

       2.       Other documents in this group, which consist of high school and college

5

course transcripts, are unrelated to his job as a police officer and what occurred during this incident. These documents (CON000160-164 and 172-178) need not be produced.

### E. Internal Affairs Investigation Report (CON000195-631):

These documents deal primarily with an incident where media were denied access to a site that was on fire. The media claimed that since they were denied access, their Fourth Amendment rights were violated. For the most part, the documents—which include numerous publicly available news reports and other documents, as well as site maps, witness interviews, incident reports and communications about the incident—are irrelevant to the current case and would not be helpful in evaluating the current situation. Thus, documents labeled as CON000196-228, 234-241, and 253-631 need not be produced.

However, Plaintiff does have an interest in obtaining the District Attorney's Final Findings and the Sheriff Department's policies, especially those relating to Constitutional rights, as they may have some relevance to the current dispute. The police policies are also useful to the extent that they pertain to the claims alleged in this case. Documents labeled as CON000229-233 and 242-252 shall be produced subject to the protective order.

**IT IS SO ORDERED.**

Dated: July 29, 2010

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge