1   Michael W. Barrett, City Attorney, State Bar No. 155968
    David C. Jones, Deputy City Attorney, State Bar No. 129881
2   NAPA CITY ATTORNEY'S OFFICE
    CITY OF NAPA
3   P.O. Box 660
    955 School Street
4   Napa, CA  94559
    Telephone:  (707) 257-9516
5   Fax:  (707) 257-9274

6   Gregory M. Fox, State Bar No. 070876
    BERTRAND, FOX & ELLIOT
7   The Waterfront Building
    2749 Hyde Street
8   San Francisco, California 94109
    Telephone:     (415) 353-0999
9   Facsimile:     (415) 353-0990

10  Attorneys for Defendants CITY OF NAPA, POLICE CHIEF RICHARD MELTON
    And OFFICER GARTH BENDER

11

12                      UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14

15  LUZ HERNANDEZ,                          Case No.:   C09-2782 EDL

16                 Plaintiff,               **DEFENDANTS CITY OF NAPA, RICHARD**
            vs.                             **MELTON AND GARTH BENDER'S**
17                                          **NOTICE OF AND MOTION FOR**
    CITY OF NAPA, et al.,                   **SUMMARY JUDGMENT, OR IN THE**
18                                          **ALTERNATIVE, PARTIAL SUMMARY**
                 Defendants.                **JUDGMENT**
19
                                            Date:   January 4, 2011
20                                          Time:  9:00 a.m.
                                            Courtroom E, 15th Floor
21                                          Magistrate Judge Elizabeth D. Laporte

22          Pursuant to the Court's Order to meet and confer on discovery following the hearing on the

23  defendants' motion to bifurcate and plaintiff's motion to compel on July 20, 2010, the parties have

24  cooperated fully. Given the complexity and pace of the discovery and the trial schedules and times

25  out of state by counsel for both parties, the parties have stipulated for an order to modify the schedule

26  for  discovery, MSJ  briefing and  a hearing date which will be filed Monday November 15, 2010.  In

27  accordance with that stipulation, defendants herein filed their MSJ.

28

# TABLE OF CONTENTS

NOTICE..................................................................................................................................1

MEMORANDUM OF POINTS & AUTHORITIES................................................................1

I.      SUMMARY OF ARGUMENT & STATEMENT OF ISSUES TO BE DECIDED.................1

II.     STATEMENT OF FACTS ............................................................................................2

III.    ARGUMENT ..............................................................................................................7

      A.      Summary Judgment Is Proper In This Case.................................................................7

      B.      The Uncontroverted Evidence Establishes That Plaintiff's Civil Rights Were Not Violated and Her Claims Under 42 U.S.C. Section 1983 Are Unsupportable ........................................................................................................8

            1.      Plaintiff's Arrest For Domestic Violence Was Supported By Ample Probable Cause ...............................................................................8

            2.      The Undisputed Evidence Does Not Support Plaintiff's Conspiracy Claim ............................................................................................14

      C.      Officer Bender Is Entitled To Qualified Immunity.......................................................15

      D.      The Undisputed Evidence Establishes That Plaintiff's Section 1983 Municipal Liability Claim Against The City And Chief Melton Is Unsupportable ........................................................................................................18

      E.      The Undisputed Evidence Does Not Support A Claim For False Arrest Under State Law ........................................................................................................22

      F.      The Undisputed Evidence Fails To Support A Claim For Intentional Infliction Of Emotional Distress ...........................................................................22

      G.      Plaintiff's Negligence Claim Is Meritless.................................................................23

      H.      Plaintiff's Respondeat Superior Liability Claim Against The City And Chief Melton Fails For the Same Reasons Her Claims Against Officer Bender Fail........................................................................................................24

IV.     CONCLUSION..........................................................................................................24

i

# TABLE OF AUTHORITIES

**Cases**

*Acri v. Varian Assoc.*
  114 F.3d 999 (9th Cir. 1997) ................................................................15

*Adams v. Williams*
  407 U.S. 143 (1972) ........................................................................8, 9

Alexander v. County of Los Angeles
  64 F.3d 1315 (9th Cir. 1995) ............................................................15

*Anderson v. Creighton*
  483 U.S. 635 (1987) ..........................................................................16

*Antique Arts Corporation v. City of Torrance*
  39 Cal.App.3d 588 (1974) .................................................................23

*Aquino v. Superior Court*
  21 Cal. App. 4th 847 (1993) ..............................................................22

*Ashley v. Sutton*
  492 F.Supp.2d 1230 (Dist. Ore. 2007) ..............................................15

*Avalos v. Baca*
  596 F.3d 583 (9th Cir. 2010) .............................................................14

*Baker v. McCollan*
  443 U.S.137 (1979) ........................................................................9, 10

*Beck v. City of Upland*
  527 F.3d 853 (9th Cir. 2008) .............................................................20

*Beier v. City of Lewiston*
  354 F.3d 1058 (9th Cir. 2004) ...........................................................10

*Board of the County Commissioners of Bryan County v. Brown*
  520 U.S. 397 (1996) .....................................................................18, 19

*Bogard v. Employers Cas. Co.*
  164 Cal. App. 3d 602 (1985) .............................................................23

*Brinegar v. United States*
  338 U.S. 160 (1949) ..........................................................................10

*Broam v. Bogan*
  320 F.3d 1023 (9th Cir. 2003) .............................................................9

*Brousseau v. Haugen*
  543 U.S. 194 (2004) ..........................................................................16

*Celotex Corp. v. Catrett*
  477 U.S. 317 ........................................................................................7

DEFENDANTS CITY OF NAPA, RICHARD MELTON AND GARTH BENDER'S MOTION
FOR SUMMARY JUDGMENT OR IN ALTERNATIVE PARTIAL SUMMARY JUDGMENT

*Christie v. Iopa*
  176 F.3d 1231 (9th Cir. 1999) ...................................................................................20, 21

*Chroma Lighting v. GTE Products Corp.*
  127 F.3d 1136 (9th Cir. 1997) .........................................................................................19

*City of Canton v. Harris*
  489 U.S. 378 (1988) ....................................................................................................18, 22

*City of Los Angeles v. Heller*
  475 U.S. 796 (1986) ............................................................................................................19

*Clouthier v. County of Contra Costa*
  591 F.3d 1232 (9th Cir. 2010) ...........................................................................18, 20, 22

*Corales v. Bennet*
  567 F.3d 554 (9th Cir. 2009) ..............................................................................................8

*Crowe v. County of San Diego*
  608 F.3d 406 (9th Cir. 2010) ...........................................................................................14

*Devenpeck v. Alford*
  543 U.S. 146 (2004) ............................................................................................................13

*Devereaux v. Abbey*
  263 F.3d 1070 (9th Cir. 2001) ............................................................................................7

*Forrett v. Richardson*
  112 F.3d 416 (9th Cir. 1997) ...........................................................................................19

*Franklin v. Fox*
  312 F.3d 423 (9th Cir. 2002) ...........................................................................................14

*Gillette v. Delmore*
  979 F.2d 1342 (9th Cir. 1992) .........................................................................................20

*Grant v. City of Long Beach*
  315 F.3d 1081 (9th Cir. 2002) ............................................................................................8

*Hunter v. Bryant*
  502 U.S. 224 (1991) ....................................................................................................15, 16

*Illinois v. Gates*
  462 U.S. 213 (1983) ..............................................................................................................9

*John B. v. Superior Court*
  38 Cal.4th 1177 (2006) ......................................................................................................23

*Long v. City, County of Honolulu*
  2003 WL 124256 (D.Hawai'i 2003) ...............................................................................20

*Maraziti v. First Interstate Bank of California*
  953 F.2d 520 (9th Cir. 1992) ...........................................................................................16

DEFENDANTS CITY OF NAPA, RICHARD MELTON AND GARTH BENDER'S MOTION
FOR SUMMARY JUDGMENT OR IN ALTERNATIVE PARTIAL SUMMARY JUDGMENT

*McCarthy v. Frost* (1973) 33 Cal.App.3d 872 ................................................................................23

*Mendocino Environmental Center v. Mendocino* County
  192 F.3d 1283 (9th Cir. 1999) ...................................................................................................14

*Menotti v. City of Seattle*
  409 F.3d 1113 (9th Cir.2005) ....................................................................................................19

*Monell v. New York City Dept. of Social Services*
  436 U.S. 658 (1978) ......................................................................................................... passim

*Nadell v. Las Vegas Metro Police Dept.*
  268 F.3d 924 (9th Cir. 2001) ....................................................................................................20

*Nelson v. Pima Community College*
  83 F.3d 1075 (9th Cir. 1996) ......................................................................................................8

*Ortega v. Sacramento County Department of Health and Human Services*
  161 Cal.App.4th 713 (2008) ......................................................................................................23

*O'Toole v. Superior Court*
  140 Cal.App.4th 488 (2006) ......................................................................................................22

*Pearson v. Callahan*
  ___ U.S. ___, 129 S.Ct. 808 (2009) .........................................................................................15

*People v. Gutierrez*
  (1985) 171 Cal.App.3d 944 ......................................................................................................11

*People v. Howell*
  30 Cal.App.3d 228 (1978) ........................................................................................................13

*People v. Longoria*
  34 Cal.App.4th 12 (1996) ........................................................................................................10

*People v. Silva*
  (1994) 27 Cal.App.4th 1160 ....................................................................................................11

*People v. Wilkins*
  (1993) 14 Cal.App.4th 761 ......................................................................................................11

*Polk County v. Dodson*
  454 U.S. 312 (1981) ..................................................................................................................18

*Quintanilla v. City of Downey*
  84 F.3d 353 (9th Cir. 1996) ......................................................................................................19

*Reynolds v. County of San Diego*
  84 F.3d 1162 (9th Cir. 1996) ....................................................................................................15

*Rodis v. City and County of San Francisco*
  558 F.3d 964 (9th Cir. 2009) ....................................................................................................16

iv

*Saucier v. Katz*
    533 U.S. 194 (2001).............................................................................................15, 16

*Scott v. Henrich*
    39 F.3d 912 (9th Cir. 1992) ...............................................................................19

*Soremekun v. Thrifty Payless, Inc.*
    509 F.3d 978 (9th Cir. 2007)...............................................................................8

*Surrell v. California Water Serv. Co.*
    518 F.3d 1097 (9th Cir. 2008) ............................................................................8

*Wong v. Tai Jing*
    __ Cal.Rptr.3d__, 2010 WL 4457330 (2010)....................................................23

*Woodrum v. Woodward County*
    *OK*, 866 F.2d 1121 (9th Cir. 1989)...................................................................14

**Californa Statutes**

Gov. Code, § 815.2(b).........................................................................................24

Gov. Code, § 820.2.............................................................................................23

Pen. Code, § 242................................................................................................10

Pen. Code, § 243.......................................................................................6, 10, 13

Pen. Code, § 243 (e)(1).......................................................................................17

Pen. Code, § 273.5.....................................................................................11, 13, 17

Pen. Code, § 836.......................................................................................10, 13, 17

Pen. Code, § 847(b)............................................................................................22

Pen. Code, § 13701...................................................................................6, 11, 17

Pen. Code, § 13701(b) ........................................................................................17

DEFENDANTS CITY OF NAPA, RICHARD MELTON AND GARTH BENDER'S MOTION
FOR SUMMARY JUDGMENT OR IN ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1

2

<u>**NOTICE**</u>

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

3        PLEASE TAKE NOTICE that on January 4, 2011 at 9:00 a.m. or as soon thereafter as the

4   matter may be heard in Courtroom E, 15th Floor, of the above-entitled Court, located at 450 Golden

5   Gate Ave., San Francisco, CA, defendants City of Napa, Chief of Police Richard Melton and police

6   officer Garth Bender will and hereby do move this Court for an order granting summary judgment, or

7   in the alternative, partial summary judgment, in favor of defendants and against plaintiff Luz

8   Hernandez.  This motion is brought pursuant to Federal Rules of Civil Procedure, Rule 56, as set

9   forth more fully in the Memorandum of Points and Authorities below, on the grounds that summary

10  judgment, or in the alternative, partial summary judgment is appropriate because: (1) the

11  uncontroverted evidence establishes that plaintiff's civil rights were not violated and her claims under

12  42 U.S.C. § 1983 are unsupportable; (2) Officer Bender is entitled to qualified immunity; (3) the

13  *Monell* liability claim against the City and Chief Melton is unsupported by any evidence; (4) the

14  evidence does not support a claim for false arrest under state law; (5) the undisputed evidence fails to

15  support a claim for intentional infliction of emotional distress; (6) plaintiff's negligence claim is

16  meritless and Officer Bender is entitled to immunity under Cal. Govt. Code 820.2; and (7) the

17  respondeat superior claim against the City and Chief Melton fails for the same reasons the claims

18  against Officer Bender fail.

19        This motion is based on this notice, the memorandum of points and authorities, the papers and

20  pleadings on file herein, and on such oral and documentary evidence as may be adduced at the

21  hearing.

22                    <u>**MEMORANDUM OF POINTS & AUTHORITIES**</u>

23  **I.        SUMMARY OF ARGUMENT & STATEMENT OF ISSUES TO BE DECIDED**

24        Plaintiff Luz Hernandez brings this action against defendants arising out of her arrest on April

25  1, 2008 for domestic violence against her boyfriend, defendant Green.  Plaintiff asserts causes of

26  action for various state law torts and claims for violation of civil rights under 42 U.S.C. Section 1983,

27  including a claim for municipal liability under Section 1983 against the City and Chief Melton.   She

28  contends that she was unlawfully arrested and that her civil rights were violated.

Plaintiff cannot raise a triable issue of material fact as to any of her claims.  Her arrest for misdemeanor battery/domestic violence was supported by probable cause based upon the totality of the circumstances known to Officer Bender at the time.  Plaintiff's boyfriend Green had visible injuries and reported that plaintiff hit, punched and scratched him, while plaintiff refused to answer questions about the altercation, had no visible injuries, denied being physically  injured and did not herself believe she was injured.  She repeatedly told the officer at the scene that nothing happened and never stated that Green physically attacked her in any way in her verbal or written statements on the date of the incident.  Plaintiff only later claimed Green physically assaulted her days after the incident when she realized she faced criminal prosecution, and she specifically apologized in writing to Officer Bender for not having told him such information at the time of the incident.  She also admitted in sworn written statement and testimony at the hearing on her request for a restraining order that she had told the officers "nothing" happened the night of the incident.  The objective facts and circumstances known to Officer Bender at the time more than sufficiently supported probable cause to believe plaintiff committed battery against Green and that she was the dominant aggressor in the incident.  Plaintiff has no evidence to support any of her claims against defendants and summary judgment, or in the alternative, partial summary judgment, should be granted.

## II.  STATEMENT OF FACTS

Plaintiff and Donald Green, who was a Napa State Hospital security officer at the time of the incident, were involved in an on-and-off dating relationship since 2006 or 2007 and had lived together for some time during their relationship.  (Second Amended Complaint ("SAC") ¶ 10; Deposition of plaintiff Hernandez ("Hernandez Deposition") 35:7-11, 71:9-72:15.)  On April 1, 2009, plaintiff and Green got into an argument at work.  (Hernandez Deposition, 84:10-16.)  Later that night plaintiff left work before 10:00 p.m. so that she would have time to get home before Green's shift ended at 10:00 p.m.  (SAC ¶ 11.)  When she arrived home, plaintiff found Green in her house wearing only his underwear.  (Hernandez Deposition, 87:17-21, 88:12-20.)  He appeared intoxicated and stumbled towards plaintiff.  (Hernandez Deposition, 89:21-90:6.)  He was bleeding on one side of his body from what looked like a mole he had tried to cut off with a pair of scissors. (Hernandez Deposition, 152:24-153:6.)  They got into a heated verbal argument.  Green appeared intoxicated and

stumbled towards plaintiff, stating he wanted to talk. (Hernandez Deposition, 89:21-90:13, 97:10-98:8.) She tried to run towards the front door, and Green grabbed her in a bear hug from behind and they fell to the floor. (Hernandez Deposition, 90:14-18, 92:22-93:10.) Plaintiff tried to get away and said she wanted to leave. (Hernandez Deposition, 95:5-11.) She telephoned 911 while yelling, "get the f*#% out of my house," during which Green slapped the telephone from her hands. (Hernandez Deposition, 102:7-23.) Plaintiff and Green continued verbally and physically fighting, including plaintiff admittedly hitting, kicking and slapping Green and repeatedly punching his chest as hard as she could. (Hernandez Deposition, 105:2-106:14, 153:16-154:16; Transcript of Napa Superior Court Proceedings, 30:25-31:4.)

City of Napa Police Officer Garth Bender was dispatched to plaintiff's residence in response to the 911 call. Dispatch advised that it received a 911 call, someone was heard yelling "get the f*#% out of my house," and then the line was disconnected. (Deposition of Garth Bender, "Bender Deposition", 47:13-48:13.) Four units arrived at the residence, including Napa Police Officer Garth Bender and County of Napa Sheriff's Deputy Hallman. (Bender Deposition, 49:10-24; Deposition of John Hallman, "Hallman Deposition", 57:22-25.) When the Officers approached the front door, Officer Bender and Deputy Hallman heard a male and female loudly arguing inside the residence. (Bender Deposition, 197:16-198:3; Hallman Deposition, 117:10-17.)

Officer Bender knocked on the door and announced himself as a Napa Police Officer. (Hernandez Deposition, 108:25-109:4.) Green answered the door dressed only in his boxer shorts and bleeding. (Bender Deposition, 61:22-62:19; Hernandez Deposition, 109:25-110:9, 205:18-207:5.) He had visible scratch marks all over his chest. (Bender Deposition, 132: 23-133:10, 134:10-24; Hallman Deposition, 103:14-104:4, 130:20-131:1.) Plaintiff and Green were separated and Deputy Hallman went down the hallway to speak with plaintiff, while Officer Bender spoke with Green. (*Id.*)

Deputy Hallman spoke with plaintiff in her bedroom for two to three minutes and questioned her about what had occurred. He asked if she was okay, and plaintiff stated she was. (Hernandez Deposition, 198:2-9, 316:23-25, 317:14-25, 318:24-319:7; Hallman Deposition, 65:4-7.) Plaintiff said she owned the house and had been in a dating relationship with Green. She did not say anything

about Green having physically injured her or having any physical contact with her, and stated only that her mouth was very dry and she wanted some water.  (Hernandez Deposition, 114:5-115:3, 115:15-22, 146:13-16; Hallman Deposition, 73:6-74:9.)  She went into her bathroom to rinse her mouth and spit into the sink.  She did not see whether she spit anything into the sink and does not know if she had any injury to her mouth from fighting with Green.  (Hernandez Deposition, 116:9-14, 147:15-22, 148:9-16, 320:14-16.)  Deputy Hallman thought he saw her spit something pink into the sink and asked her if she had any injuries.  (Hallman Deposition, 74:2-6.)  Plaintiff specifically said "No", and she herself did not believe she was injured.  (Hernandez Deposition, 116:15-24; Hallman Deposition, 74:2-9, 87:14-23.)  Plaintiff now claims that after Deputy Hallman left the room she told one of the officers that Green was shaking and mishandling her, but she does not know the identity of that officer, and she specifically testified that it was neither Deputy Hallman nor Officer Bender. (Hernandez Deposition, 118:12-119:16, 120:8-25.)

While speaking with Green, Officer Bender noted that Green smelled of alcohol, his speech was slightly slurred and it appeared he had been drinking.  (Bender Deposition, 63:4-14.)  Green told Officer Bender that he and plaintiff were in an on and off relationship and had previously lived together.  He stated they had gotten into an argument about their relationship and plaintiff had pushed and shoved him, scratching his chest and right arm.  (Bender Deposition, 68:21-69:14, 69:21-70:9, 135:11-15, 136:5-137:1, 199:1-200:4.)   Green denied striking or physically assaulting plaintiff. (Bender Deposition, 70:13-22.)  Officer Bender asked Green to write a detailed statement about what happened, and Green was reluctant to write all of what he had told Officer Bender, repeatedly stating that he was embarrassed and he did not want himself or plaintiff to get into any trouble.  (Bender Deposition, 70:23-71:18, 72:11-13, 102:22-103:6, 113:17-114:7, 114:13-22, 115:1-7, 116:16-22, 122:5-11, 123:17-124:15, 125:24-126:8, 127:15-19, 128:14-21, 132:1-133:10;  Hallman Deposition, 136:18-24.)

Deputy Hallman told Officer Bender that he saw plaintiff spit something into the sink that appeared to be pink.  (Bender Deposition, 90:15-21; Hallman Deposition, 85:19-86:2, 88:1-8.)  He also said the fight appeared to have gotten physical and he mentioned something about plaintiff's wrists or fingernails.  (Hallman Deposition, 102:3-17, 118:21-119:17, 126:7-16.)

1    Officer Bender then spoke with plaintiff to try to determine what had happened.  (Bender

2    Deposition, 83:21-84:6.)   She was fully clothed, wearing a long sleeve sweater and long pants.

3    (Bender Deposition, 74:6-7;  Hernandez deposition, 87:22-88:11.)    Officer Bender examined

4    plaintiff's mouth with his flashlight and did not see any injuries inside her mouth.   (Bender

5    Deposition, 90:25-91:4; Hernandez Deposition, 148:17-19.)  Plaintiff never stated she had any injury

6    in her mouth, she did not believe she was injured and she had no idea why he was looking in her

7    mouth.  (Bender Deposition, 92:7-10; Hernandez Deposition, 148:9-16, 149:7-11, 149:23-150:1.)

8    Officer Bender also looked at plaintiff's wrists but did not note any injury, and in fact, plaintiff

9    herself did not see any marks on her wrists.  (Bender Deposition, 66:16-25; Hernandez Deposition

10   301:10-302:10.)

11   Officer Bender repeatedly asked plaintiff what happened, but she refused to answer and only

12   said that "Nothing" was going on.  (Bender Deposition, 72:19-73:11, 83:2-84:6, 107:12-14, 107:24-

13   108:9, 148:15-18; Hernandez Deposition, 207:15-209:17; Transcript, 26:17-27:4.)  Plaintiff only now

14   claims that she told Officer Bender that "Donald had attacked" her, but she did not elaborate on what

15   that meant and she specifically did not say she <u>physically</u> attacked her.  (Hernandez Deposition, 131:

16   25-132:11, 135:9-21, 136:19-137:9, 137:19-25.)  Plaintiff's refusal to answer any questions caused

17   Officer Bender to believe she was hiding something and possibly guilty of some criminal conduct.

18   (Bender Deposition, 72:19-73:10, 84:15-25, 85:9-24

19   Officer Bender photographed plaintiff, allowing her to remain seated when she declined his

20   request to stand for photographs.  (Bender Deposition, 103:19-104:5; Hernandez Deposition, 138:9-

21   19.)  The photographs do not show any injury to plaintiff.  (Hernandez Deposition, 130:24-131:17,

22   138:19-139:4.)  Plaintiff asked Officer Bender whether Green was claiming she had hit him, and

23   Officer Bender told her he had not made such claims.  (Bender Deposition, 106:13-25; Hernandez

24   Deposition, 125:21-24; 136:11-18, 142:25-143:10.)  Plaintiff admittedly never told any of the officers

25   that Green grabbed her or physically assaulted her, she did not tell them she was injured and she did

26   not have any visible injuries, she did not show them any physical condition she thought might be an

27   injury or ask for medical treatment, as she herself did not believe she was injured. (Hernandez

28   Deposition, 123:18-124:7, 124:16-125:20, 139:7-12, 142:5-24, 144:22-25, 199:6-14, 302:5-10.)

DEFENDANTS CITY OF NAPA, RICHARD MELTON AND GARTH BENDER'S MOTION
FOR SUMMARY JUDGMENT OR IN ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1    Plaintiff provided a statement in her own handwriting stating that she and Green were

2    involved in a verbal altercation.  She states she initially wrote the word "physical" and then scratched

3    it out before Officer Bender saw what she had written.  Her written statement made no reference to

4    any physical altercation, physical attack on her or physical injury to her person, even though she

5    understood Officer Bender wanted her to write what had happened from the beginning of the incident

6    to the end.   (Bender Deposition, 140:11-23, 141:6-18; Hernandez Deposition, 154:17-20, 155:13-18,

7    157:4-16,  157:21-158:3,  158:12-14,  158:23-159:5,  159:18-160:25,  161:24-162:10,  162:23-163:8;

8    plaintiff's statement, Exhibit 6 to plaintiff's deposition.)

9    Based upon the visible injuries to Green's chest, plaintiff's refusal to explain what had

10   happened and her repeated claims that they only had a verbal argument, Officer Bender determined

11   that plaintiff was the dominant aggressor in the incident and that there was probable cause to arrest

12   her for domestic violence against Green.  (Bender Deposition, 84:15-25, 111:20-112:3.)  Pursuant to

13   the requirements of Penal Code Section 13701 and Napa Police Department General Order 91-12

14   mandating arrest of the dominant aggressor in a domestic violence situation, plaintiff was arrested for

15   violation of Penal Code § 243.  (Bender Deposition, 201:5-23, 202:12-19, 203:2-11, 206:23-208:1.)

16   Even as plaintiff was being arrested and transported to jail, she never told Officer Bender that Green

17   physically attacked or assaulted her in any way.  (Hernandez Deposition, 139:24-140:2, 140:15-22,

18   141:11-17, 142:5-19.)  She pointed out Green's car parked around the corner from her house, and she

19   claims she again stated Green attacked her but she did not make any claims that Green physically

20   attacked or harmed her.  (Bender Deposition, 150:13-18; Hernandez Deposition, 150:20-151:14.)

21   On April 3, 2009, plaintiff contacted the Napa Police Department and asked to speak to the

22   officer who arrested her to give her side of the story.  Officer Bender came to her house that evening

23   to drop off forms for her to give another statement.   (Hernandez Deposition, 165:19-166:12.)

24   Plaintiff provided another handwritten statement that was three pages long.  (Hernandez Deposition,

25   163:24-164:24, 174:6-7, 174:20-175:3, 354:8-14.)  She then claimed in her second statement that

26   they got into a physical altercation, Green physically restrained and injured her, and she wrote "I am

27   sorry I did not let you know that Donald restrained me and hurt me."  (Hernandez Deposition,

28   180:15-181:16, 184:20-185:12, 187:19-188:3.)   On April 8, 2008, plaintiff filed a handwritten

1   statement with the Court, <u>under penalty of perjury</u>, again admitting that, "I chose not to say too much.

2   I did say I had dialed 911, that the house was mine, that Donald had broken into my house and that

3   Donald did not live with me." (Hernandez Deposition, 193:1-4, 193:24-194:6, 196:5-197:1, 200:2-

4   6.) She further admitted that when speaking to the police "I did not describe the physical

5   altercation." (Hernandez Deposition, 200:12-201:5, 202:14-21.) She did not claim that she told the

6   officers on the night of the incident that Green attacked her. (Hernandez Deposition, 201:6-9.)

7       Plaintiff subsequently testified at the hearing on her application for a restraining order against

8   Green, admitting that she did not say much to the officers at the time of the incident, she did not

9   provide them complete information, and significantly, that when asked what had happened she

10   answered "nothing". (Hernandez Deposition, 204:6-24, 205:18-206:7, 208:11-209:17; Transcript,

11   26:17-27:4.)

12       Before the incident, Officer Bender received training in handling domestic violence situations

13   while attending the police academy and at least every other year for the thirteen years before the

14   incident. (Bender Deposition, 206:3-15.) Napa Police Department General Order 91-12 sets forth

15   the City's policy and procedures for handling domestic violence situations. Officer Bender's conduct

16   complied with the requirements of the general order. (Bender Deposition, 164:8-165:8, 169:19-

17   170:14, 170:22-172:11.)

## III.  ARGUMENT

### A.    Summary Judgment Is Proper In This Case

20       "The party moving for summary judgment bears the initial burden of demonstrating the

21   absence of a genuine issue of fact for trial. . . . When the nonmoving party has the burden of proof at

22   trial, the moving party need only point out "that there is an absence of evidence to support the

23   nonmoving party's case.'" (*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).) "Once the

24   moving party carries its initial burden, the adverse party . . . must provide affidavits or other sources

25   of evidence that 'set forth specific facts showing that there is a genuine issue for trial." (*Id.*, *citing*

26   *FRCP Rule 56(e) and Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1996).) "Conclusory,

27   speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact

28   and defeat summary judgment." (*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.

2007).)  "There must be enough doubt for a 'reasonable trier of fact' to find for the plaintiffs in order to defeat the summary judgment motion."  (*Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).) Mere allegation and speculation, and conclusory statements by plaintiff without factual support are not enough to defeat a motion for summary judgment.  (*Surrell v. California Water Serv. Co.,* 518 F.3d 1097, 1103 (9th Cir. 2008), *Nelson v. Pima Community College,* 83 F.3d 1075, 1081-82 (9th Cir. 1996).)

In the instant case, plaintiff has no evidence showing a genuine issue for trial.  Her speculation, conjecture and after-the-fact revelations are insufficient to establish any of her claims and summary judgment should be entered in favor of defendants.  Argument and authorities on these points follows.

**B.  The Uncontroverted Evidence Establishes That Plaintiff's Civil Rights Were Not Violated And Her Claims Under 42 U.S.C. Section 1983 Are Unsupportable**

Plaintiff asserts claims under 42 U.S.C. Section 1983 for violation of her civil rights based upon claims of unlawful arrest and conspiracy to violate civil rights.[1]  The undisputed evidence does not support liability against Officer Bender under either theory.[2]

1.    Plaintiff's Arrest For Domestic Violence Was Supported By Ample Probable Cause

Probable cause to arrest depends upon "whether, at the moment the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'"  [Brackets in original text.]  (*Adams v. Williams*, 407 U.S. 143, 148 (1972); *Grant v. City of Long Beach,* 315 F.3d 1081 (9th Cir. 2002) (question is

---

[1]    Plaintiff has agreed to dismiss her claim for excessive force under Section 1983, and correspondingly, assault snd battery under state law.

[2]    Plaintiff also identifies the City and Chief Melton as defendants in the first cause of action under Section 1983, however, "A municipality cannot be held liable . . . under § 1983 on a respondeat superior theory."  (*Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978); *see also Clouthier v. County of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010).)  The allegations of plaintiff's complaint and the evidence shows that Chief Melton was not **present** and did not participate in plaintiff's arrest, and there is no basis for his direct liability under Section 1983.  To the extent plaintiff is asserting claims against the City and Chief Melton based upon *Monell,* her first cause of action is duplicative of the second, and such claims are addressed in Section "D" below.

DEFENDANTS CITY OF NAPA, RICHARD MELTON AND GARTH BENDER'S MOTION
FOR SUMMARY JUDGMENT OR IN ALTERNATIVE PARTIAL SUMMARY JUDGMENT

whether "at the moment the arrest was made," the facts and circumstances within the officers' knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing the suspect had violated the law).)  "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. . . . Rather, the court will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action:  'In dealing with probable cause, however, as the very name implies, we deal with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  [Internal citations omitted.]  (*Id*. at 149.)

'Probable cause' by definition deals not with certainty, but with probabilities: ". . . the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."  (*Illinois v. Gates*, 462 U.S. 213, 231-232 (1983.)  The term 'probable cause' means "a seizure made under circumstances which warrant suspicion. . . . it is clear that 'only the probability and not a prima facie showing of criminal activity is the standard of probable cause.'"  [Internal citations omitted.]  (*Id.* at 235.)  Further, once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused.  (*Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003).)  Once probable cause to arrest is established, police officers are "not 'required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a [particular] defense . . ." (*Id.*, *citing Baker v. McCollan*, 443 U.S.137, 145-146 (1979).)[3]

As the Supreme Court stated, "The Constitution does not guarantee that only the guilty will be arrested.  If it did, section 1983 would provide a cause of action for every defendant acquitted—indeed for every suspect released."  (*Baker*, 443 U.S. at 145 (dismissing section 1983 claim by individual detained on the basis of mistaken identity).)  The Court continued:

> Given the requirement that arrests be made only on probable cause and that one detained be accorded a speedy trial, we do not think a [peace officer] . . . is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.

---

3    In *Broam*, by contrast, the police had numerous items of exculpatory evidence *prior* to arrest.  (320 F.3d 1032.)

1    Nor is the official charged with maintaining custody of the accused . . . required by
2    the Constitution to perform an error-free investigation of such a claim.  (*Id.*)

3    All that is required is that – as here—the facts fall on the side of probability.  (*Brinegar v. United*
4    *States*, 338 U.S. 160, 176 (1949); *Beier v. City of Lewiston,* 354 F.3d 1058, 1065 (9th Cir. 2004)
5    (probable cause exists if, "under the totality of the circumstances known to the arresting officers, a
6    prudent person would have concluded that there was a fair probability the [plaintiff] had committed a
7    crime").)

8    California Penal Code § 242 provides that "A battery is a willful and unlawful use of force or
9    violence upon the person of another."  In specifically proscribing domestic violence, Cal. Penal Code
10   § 243 provides in part that:

11   (e)(1)  When a battery is committed against a . . . person with whom the defendant
12   currently has, or has previously had, a dating . . . relationship, the battery is
     punishable by a fine not exceeding two thousand dollars ($2,000), or by
13   imprisonment in a county jail for a period of not more than one year, or by both that
     fine and imprisonment. . . .

14   (f)  As used in this section:
     . . .
15       (5)  "Injury" means any physical injury which requires professional medical
         treatment.
16   . . .
17       (10)  "Dating relationship" means frequent, intimate associations primarily
         characterized by the expectation of affectional or sexual involvement
18       independent of financial consideration.

19   Although the statute defines "injury" as any physical injury that requires professional medical
20   treatment, there is no requirement that the victim actually receive medical treatment; under an
21   objective and factual test, it is the nature, extent, and seriousness of the injury, rather than the
22   inclination or disinclination of the victim to seek medical treatment, which is determinative.  (*People*
23   *v. Longoria,* 32 Cal.App.4[th] 12, 17 (1996).)

24   Similarly, California Penal Code § 836 provides in relevant part that:

25   (d)       . . . if a suspect commits an assault or battery upon a current or former
26   cohabitant . . . [or] a person with whom the suspect currently is having or has
     previously had an engagement or dating relationship as defined in paragraph (10) of
27   subdivision (f) of Section 243, . . . a peace officer may arrest the suspect without a
     warrant where both of the following circumstances apply:
28       (1)    The peace officer has probable cause to believe that the person to be
             arrested has committed the assault or batter, whether or not it has in

10

DEFENDANTS CITY OF NAPA, RICHARD MELTON AND GARTH BENDER'S MOTION
FOR SUMMARY JUDGMENT OR IN ALTERNATIVE PARTIAL SUMMARY JUDGMENT

fact been committed.

(2)   The peace officer makes the arrest as soon as probable cause arises to believe that the person to be arrested has committed the assault or battery, whether or not it has in fact been committed.

Cal. Penal Code § 273.5 provides in part that:

(a)   Any person who willfully inflicts upon a person who is his or her spouse, former spouse . . . corporal injury resulting in a traumatic condition, is guilty of a felony . . .

(b)   As used in this section, "traumatic condition" means a condition of the body, such as a wound or external or internal injury, whether of a minor or serious nature, caused by a physical force.

"Section 273.5 is violated when the defendant inflicts even "minor" injury.  Unlike other felonies, e.g., aggravated battery . . . which require serious or great bodily injury, 'the Legislature has clothed persons of the opposite sex in intimate relationship with greater protection by requiring less harm to be inflicted before the offense is committed.'"  (*People v. Wilkins,* 14 Cal.App.4th 761, 771 (1993).)  "Thus, a defendant who inflicts only 'minor' injury violates the statute."  (*People v. Silva,* 27 Cal.App.4th 1160, 1166 (1994).)  "The statute prohibits an assault by means of force likely to produce great bodily injury, not the use of force which does in fact produce such injury. . . . Further, the use of hands or fists alone may be sufficient to establish a violation."  (*Id.* at 1166, fn. 7.)  "[A]n officer given the alternative of arresting for a felony under the provisions of section 273[.5] may do so when he observes traumatic injury."  (*People v. Gutierrez,* 171 Cal.App.3d 944, 950 (1985).)  Traumatic injury for purposes of Section 273.5 has been defined as "a wound or other abnormal bodily condition resulting from the application of some external force, [and] an abnormal condition of the living body produced by violence . . . [and also as] 'an injury or wound to a living body caused by the application of external force or violence . . .'  It is inherent in the definition that both serious and minor injury is embraced – traumata of all kinds.'"  [Original italics.]  (*Gutierrez*, 171 Cal.App.3d at 952.)

For example, in *Wilkens*, supra, where "officers were summoned shortly after midnight, found the victim crying uncontrollably and learned she had been assaulted and injured by the defendant," "the arrest of defendant was supported by reasonable cause."  (*Wilkens*, 14 Cal.App.4th at 772, 776.)

Penal Code Section 13701 further requires that "Peace officers shall make reasonable efforts

to identify the dominant aggressor in any incident.  The dominant aggressor is the person determined to be the most significant, rather than the first aggressor."

The undisputed facts of the instant case establish as a matter of law that plaintiff's arrest in the instant case was supported by ample probable cause.  Officer Bender was dispatched to the scene in response to a 911 hang up and he heard plaintiff and Green loudly arguing when he approached the house, indicating a possible domestic disturbance.  When Green opened the door he was dressed only in his underwear and Officer Bender observed that he was bleeding and had significant, visible scratches all over his chest that looked like he had been attacked by a wild cat.  During questioning, Green told Officer Bender that he and plaintiff were involved in an off and on romantic relationship and had previously lived together.  He also told Officer Bender that he and plaintiff had gotten into an argument and plaintiff pushed and shoved him, scratching his right arm and chest.  He denied striking or physically assaulting plaintiff.

By contrast, plaintiff refused to answer questions about the incident, she was uncommunicative and evasive, and only told Officer Bender and Deputy Hallman that "nothing" happened.  She did not have any visible injuries and Officer Bender did not observe any injuries even though he examined the inside of her mouth with a flashlight and looked at her wrists. When specifically asked, she denied having any injuries and did not herself believe she was injured.  She never told Officer Bender or Deputy Hallman that Green hit, restrained or otherwise physically assaulted her.  She only asked whether Green had reported that *she* hit *him*.  Plaintiff was given ample opportunities to advise Officer Bender of physical injury or any physical contact by Green, yet she never made any such claims verbally or in writing.

Although plaintiff now claims she told Officer Bender that Green attacked her, a claim which the undisputed evidence shows is either a mistake or serious misstatement of what actually occurred, it is undisputed that she never explained what this meant and never claimed that Green physically attacked her.  In fact, she specifically scratched out the word "physically" on her handwritten statement before Officer Bender could see what she wrote.  Plaintiff only first reported a physical altercation with Green when she wrote out a second statement two days after her arrest, when it became apparent to her that she faced criminal charges for the incident.  Significantly, even if

1    plaintiff had told Officer Bender that Green attacked her, this would not negate probable cause to

2    believe plaintiff was the <u>dominant</u> aggressor in the incident, given Green's visible injuries and his

3    statements that plaintiff hit, punched and scratched him viewed against plaintiff's refusal to answer

4    questions or explain what happened and the absence of visible injuries to her.

5         Moreover, that plaintiff told Officer Bender that she owned the house, that Green was already

6    there when she arrived home and that she wanted him out of the house does not negate probable

7    cause to believe she was the dominant aggressor in committing battery against Green.  She did not

8    state verbally or in writing that Green broke into her home, both she and Green stated they had been

9    in a romantic relationship and had lived together at some point, and there was nothing to indicate

10   Green was trespassing and plaintiff was only trying to evict him from the premises as she likely will

11   now claim.    Based upon the limited information she revealed, Officer Bender reasonably could

12   believe that Green was permissibly in the home when they got into a fight that escalated into a

13   physical confrontation in which Green was injured and plaintiff was the dominant aggressor.

14        The totality of the circumstances known to Officer Bender at the time he arrested plaintiff for

15   domestic battery were sufficient to support suspicion that plaintiff had committed battery against

16   Green under Penal Code Sections 243, 273.5 or 836.  Whether she in fact had committed battery or

17   was the dominant aggressor is immaterial.  The law does not require that only guilty persons are

18   arrested, but allows for reasonable mistakes.  Officer Bender certainly could not be expected to know

19   purported circumstances about the incident that plaintiff refused to reveal, and he had no obligation,

20   authority or means to force plaintiff to provide different or additional information than what she

21   chose to reveal after repeated questioning.    Officer Bender's decision to arrest plaintiff for

22   misdemeanor battery rather than a felony was supported by ample probable cause and did not violate

23   plaintiff's Fourth Amendment rights.[4]

24   *///*

---

26   [4]    Notwithstanding the duty to make an arrest, the officer has discretion on what violation to charge an assailant.

27   (*People v. Howell,* 30 Cal.App.3d 228 (1978); *Devenpeck v. Alford*, 543 U.S. 146 (2004).)  Officer Bender thus
     could properly arrest plaintiff only for misdemeanor battery under Penal Code § 243 even though the

28   circumstances may also have supported her arrest for violation of Penal Code §§ 273.5 or 836.

DEFENDANTS CITY OF NAPA, RICHARD MELTON AND GARTH BENDER'S MOTION
FOR SUMMARY JUDGMENT OR IN ALTERNATIVE PARTIAL SUMMARY JUDGMENT

2.      The Undisputed Evidence Does Not Support Plaintiff's Conspiracy Claim

There is no evidence at all to support plaintiff's claim that Officer Bender conspired with Deputy Hallman and Green to deprive her of her civil rights.  "To establish liability for a conspiracy in a § 1983 case, a plaintiff must 'demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights. . . . 'Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants.'" . . .  To be liable, each participant in the conspiracy need not know the exact details of the plan, but **each participant must at least share the common objective of the conspiracy**."  [Emphasis added.]  (*Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010), *citing Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999); *see also, Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).)   "The defendants must have, 'by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage.'" [Internal citations omitted.]  (*Mendocino Environ. Center*, 192 F.3d at 1301.)

Further, a "conspiracy allegation, even if established, does not give rise to liability under § 1983 unless there is an actual deprivation of civil rights" resulting from the conspiracy.  (*Woodrum v. Woodward County, OK*, 866 F.2d 1121, 1126 (9th Cir. 1989); *Mendocino Environ. Center*, 192 F.3d at 1301 and *Avalos v. Baca,* 596 F.3d 583, 592 (9th Cir. 2010).)  "In order to state an adequate claim for relief under section 1983, plaintiff must allege and prove <u>both</u> a conspiracy <u>and</u> an actual deprivation of rights; <u>mere proof of a conspiracy is insufficient</u> to establish a section 1983 claim." [Emphasis added.]  (*Avalos*, 596 F.3d at 592, *citing Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980).)

As discussed fully in Section "B1" above, the undisputed evidence establishes that plaintiff's arrest was supported by probable cause and did not violate her civil rights.  Plaintiff's conspiracy claim thus fails for the same reasons her unlawful arrest claim fails.  Moreover, there is no evidence that Officer Bender shared a common objective with Deputy Hallman and Green to wrongfully arrest plaintiff, particularly where Green was visibly injured and plaintiff denied anything happened, refused to provide any information and never claimed she was physically assaulted by Green. Plaintiff's conspiracy claim is unsupported by the evidence.

14

1    The undisputed evidence establishes that plaintiff's Section 1983 claim against officer Bender

2    is unsupportable under any theory.  Summary judgment on this issue should be granted.

3    **C.    Officer Bender Is Entitled To Qualified Immunity**

4    Even if Officer Bender's conduct could somehow be construed to violate plaintiff's rights,

5    Officer Bender is entitled to judgment in his favor based on qualified immunity.  The doctrine of

6    qualified immunity protects government officials from liability "insofar as their conduct does not

7    violate clearly established statutory or constitutional rights of which a reasonable person would have

8    known. . . . The protection of qualified immunity applies regardless of whether the government

9    official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law

10   and fact." (*Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 815 (2009).)  "[O]fficers are entitled

11   to qualified immunity even if they acted unconstitutionally, as long as a reasonable officer could have

12   believed the conduct lawful." (*Alexander v. County of Los Angeles,* 64 F.3d 1315, 1322 (9th Cir.

13   1995)[5].)

14   Qualified immunity applies where a reasonable officer could have believed the conduct was

15   justified, notwithstanding that reasonable officers could disagree on that issue. (*Reynolds v. County of*

16   *San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996).[6])  A court discerns whether "the [officer] acted

17   reasonably under settled law in the circumstances, not whether another reasonable, or more

18   reasonable interpretation of the events can be constructed … after the fact." (*Hunter v. Bryant,* 502

19   U.S. 224, 228 (1991).) "The qualified immunity standard gives ample room for mistaken judgments

20   by protecting all but the plainly incompetent or those who knowingly violate the law." (*Id*. at 227.)

21   The inquiry as to whether the right was clearly established "must be undertaken in light of the

22   specific context of the case, not as a broad general proposition." (*Saucier v. Katz,* 533 U.S. 194, 205

23   (2001).)[7]  The right allegedly violated "must have been 'clearly established' in a more particularized,

24   and hence more relevant sense . . . The relevant, dispositive inquiry in determining whether a right is

25   clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful

26   _____

27   [5]   Overruled in part on other unrelated grounds, as stated in *Ashley v. Sutton*, 492 F.Supp.2d 1230, 1252 (Dist. Ore. 2007).

28   [6]   Overruled in part on other unrelated grounds, *Acri v. Varian Assoc.,* 114 F.3d 999 (9th Cir. 1997).
     [7]   Overruled in part on the grounds that the *Saucier* qualified immunity analysis procedure is not mandatory, but is helpful and
     may be followed in the Court's discretion. (*Pearson,* 129 S.Ct. at 813, 818.)

DEFENDANTS CITY OF NAPA, RICHARD MELTON AND GARTH BENDER'S MOTION
FOR SUMMARY JUDGMENT OR IN ALTERNATIVE PARTIAL SUMMARY JUDGMENT

in the situation he confronted." (*Id*. at 202.)  Qualified immunity recognizes "that reasonable mistakes can be made as to the legal constraints on particular police conduct. . . . If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense."  (*Brousseau v. Haugen,* 543 U.S. 194, 205 (2004).)  It is plaintiff's burden to prove that the law governing the officers' conduct was "clearly established."  (*Maraziti v. First Interstate Bank of Cal.,* 953 F.2d 520, 523 (9th Cir. 1992).)

Moreover, "The Supreme Court has 'recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present.' . . . In such cases those officials should not be held personally liable." [Internal citations and ellipses omitted.]  (*Rodis v. City and County of San Francisco*, 558 F.3d 964, 970-71 (9th Cir. 2009), *citing Hunter, supra, and Anderson v. Creighton,* 483 U.S. 635, 641 (1987).)

In *Rodis,* Rodis brought a § 1983 action alleging that his arrest on suspicion of passing counterfeit bills was unsupported by probable cause.  The $100 bill Rodis attempted to use had unusual markings and lacked security features, but was in fact authentic.  The Ninth Circuit concluded that although the arrest was unfortunate, the evidence did not establish that the officer's belief the bill was counterfeit was plainly incompetent, and he was entitled to qualified immunity. (*Rodis*, 558 F.3d at 971.)

Officer Bender similarly is entitled to qualified immunity. First, as discussed fully above, plaintiff's arrest was supported by probable cause and her rights were not violated, thus "there is no necessity for further inquiries concerning qualified immunity."  Second, plaintiff also cannot establish the law was clearly established such that Officer Bender would have been on notice that his conduct under the particular circumstances of this case was prohibited. It is plaintiff's burden to prove that the law governing the officer's conduct was "clearly established."  *(Maraziti,* 953 F.2d at 523.)  Officer Bender plainly was entitled to rely on his observations of plaintiff and Green, their respective statements about the incident, plaintiff's physical condition, demeanor and refusal to respond in determining probable cause, and he was clearly authorized to arrest plaintiff under the circumstances because it reasonably appeared that she had physically assaulted and injured Green.

Indeed, the Penal Code and Napa Police Department General Order 91-12 required Officer

16

Bender to arrest plaintiff under the circumstances.  Penal Code Section 13071 provides in relevant part that:

> (a)  Every law enforcement agency in this state shall develop, adopt, and implement written policies and standards for officers' responses to domestic violence calls . . .

> (c)  The written policies shall encourage the arrest of domestic violence offenders if there is probable cause that an offense has been committed. . . . These policies shall discourage, when appropriate, but not prohibit, dual arrests. **Peace officers shall make reasonable efforts to identify the dominant aggressor in any incident. The dominant aggressor is the person determined to be the most significant, rather than the first, aggressor**. In identifying the dominant aggressor, an officer shall consider the intent of the law to protect victims of domestic violence from continuing abuse, the threats creating fear of physical injury, the history of domestic violence between the persons involved, and whether either person acted in self-defense. These arrest policies shall be developed, adopted, and implemented by July 1, 1996. . . .

Napa Police Department General Order 91-12 incorporates Penal Code § 13701, including much of the precise language of Section 13701(b), and also provides that:

> C.  MISDEMEANOR ARRESTS

> 1.  Shall be made when there is reasonable cause to believe that a misdemeanor has been committed whether in the presence of an officer or not.

(See General Order 91-12, attached as Exhibit G to the Declaration of Gregory M. Fox.)

The Order then goes on to define misdemeanor exceptions for warrantless arrests for misdemeanors committed outside the officers' presence pursuant to Penal Code §§ 243 (e)(1), 273.5 and 836.  The Order also notes that "Releasing a domestic violence suspect on a citation is strongly discouraged because of the likelihood of a continuing offense."  (General Order 91-12, subsection "C.4".)

Accordingly, under Penal Code § 13701 and the Napa Police Department General Order, Officer Bender was required to arrest plaintiff under the circumstances, given Green's visible injuries and statements, absence of notable injuries to plaintiff, her statement that "nothing" happened and her refusal to provide any information as to what occurred. Plaintiff thus cannot establish that the law was clearly established *prohibiting* Officer Bender from arresting her under the circumstances of this case.  A reasonable officer in the same circumstances could and would have believed that her arrest was justified.

No authority required Officer Bender to know purported circumstances about the incident that plaintiff refused to reveal, and he had no obligation or authority to force plaintiff to provide different or additional information than what she chose to reveal after repeated questioning. Even if Officer Bender's determination that plaintiff was the dominant aggressor and had committed battery against Green was mistaken, his belief that probable cause existed was reasonable and he is entitled to qualified immunity from plaintiff's Section 1983 claims.

**D.    The Undisputed Evidence Establishes That Plaintiff's Section 1983 Municipal Liability Claim Against The City And Chief Melton Is Unsupportable**

Plaintiff here contends that the City of Napa and Chief Melton are liable under 42 U.S.C. Section 1983 because they "have been given notice of an unwritten habit, policy, custom, or practice" of ongoing constitutional violations and were deliberately indifferent to this pattern and practice and ratified the alleged unconstitutional conduct. (SAC ¶ 26.) It is well established that "a municipality cannot be held liable solely because it employs a tortfeasor—or in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." (*Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978), *see also Clouthier v. County of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010.) Local governing bodies can be sued directly under Section 1983 only where the alleged unconstitutional conduct is the result of an official policy, pattern or practice. (*Monell*, 436 U.S. at 690.) "[A] municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation." (*City of Canton v. Harris*, 489 U.S. 378, 389 (1988), *citing Monell*, 436 U.S. at 694 and *Polk County v. Dodson*, 454 U.S. 312, 326 (1981).)

"[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and **must demonstrate a direct causal link between the municipal action and the deprivation of federal rights**." [Emphasis added.] (*Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1996).) "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." (*Id.* at 405.) "To the extent that we have recognized a cause of action under § 1983 based on a single decision attributable to a municipality, we have done so only where

18

1   the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of

2   federal rights also proved fault and causation."  (*Id.*)

3         There are three ways to show a policy or custom of a municipality:

4         (1) By showing a longstanding practice or custom which constitutes the standard

5   operating procedure of the local government entity;

6         (2) By showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision or

7

8         (3) By showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

9   (*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir.2005).)

10        Further, "While the liability of municipalities doesn't turn on the liability of individual

11  officers, it is contingent on a violation of constitutional rights."  (*Scott v. Henrich*, 39 F.3d 912, 916

12  (9th Cir. 1992); *cert. denied*, 515 U.S. 1159, 115 S.Ct. 2612 (1995).)[8]  "[N]either *Monell v. New York*

13  *City Dept. of Social Services*, 436 U.S. 658 (1978), nor any other of our cases authorizes the award of

14  damages against a municipal corporation based on the actions of one of its officers when in fact the

15  jury has concluded that the officer inflicted no constitutional harm.  If a person has suffered no

16  constitutional injury at the hands of the individual police officer, the fact that the departmental

17  regulations might have *authorized* the use of constitutionally excessive force is quite beside the

18  point."  [Original italics.]  (*City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986).)  Under *Heller,*

19  *supra,* and general principles of Section 1983 liability, an individual may recover *only* when that

20  individual's federal rights have been violated.  (*Quintanilla v. City of Downey,* 84 F.3d 353, 356 (9th

21  Cir. 1996); *Forrett v. Richardson,* 112 F.3d 416, 421 (9th Cir. 1997), *cert. denied,* 523 U.S. 1049

22  (1998), overruled on other grounds, *Chroma Lighting v. GTE Products Corp.*, 127 F.3d 1136 (9th Cir.

23  1997).)

24        Plaintiff in the instant case cannot establish any municipal liability claim against the City

25  because she cannot show *both* a violation of constitutional rights *and* that the violation was the result

26

27      [8]    Overruled in part on other unrelated grouns, as stated in *Long v. City, County of Honolulu, 2003 WL 124256*

28  *(D.Hawai'I 2003).*

19

1  of an official policy, pattern or practice of the City.   The undisputed evidence establishes that

2  plaintiff's arrest was supported by ample probable cause and her constitutional rights were not

3  violated.   Plaintiff has no evidence at all to show any unconstitutional official policy pattern or

4  practice of the City, and no evidence to show a direct causal link between municipal action and

5  deprivation of any federal rights.

6     Moreover, plaintiff has no evidence to support her *Monell* liability claim based on ratification.

7  Plaintiff alleges the City and Chief Melton "demonstrated deliberate indifference to this pattern and

8  practice of constitutional violations by failing to take necessary, appropriate or adequate measures to

9  prevent the continued perpetuation of said pattern of conduct by Napa police officers" and ratified the

10  unconstitutional acts.   (SAC ¶ 28.) "To show ratification, a plaintiff must prove that the 'authorized

11  policymakers approve a subordinate's decision and the basis for it." (*Christie v. Iopa*, 176 F.3d 1231,

12  1239 (9th Cir. 1999).)  It requires that municipal policymakers make a deliberate choice to endorse a

13  subordinate's decision and the basis for it.  (*Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992),

14  *Clouthier, supra,* 591 F.3d at 1250.) "Accordingly, ratification requires, among other things,

15  knowledge of the alleged constitutional violation." (*Christie*, 176 F.3d at 1239.)  "A policymakers

16  knowledge of an unconstitutional act does not, by itself, constitute ratification.   Instead, a plaintiff

17  must prove that the policymaker approved of the subordinate's act.  For example, it is well settled

18  that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute

19  approval.  'To hold cities liable under section 1983 whenever policymakers fail to overrule the

20  unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior*

21  liability into section 1983." [Internal citations omitted.] (*Christie*, 176 F.3d at 1239-1240;  *See also,*

22  *Gillette*, 979 F.2d at 1348, "We decline to endorse this end run around *Monell*." (no municipal

23  liability where there was no evidence that City Manager made a deliberate choice to endorse

24  unconstitutional employment decision and the basis for it); *Nadell v. Las Vegas Metro Police Dept.,*

25  268 F.3d 924, 929-30 (9th Cir. 2001)[9] (no basis for municipal liability where there was no evidence

26  that previous constitutional violations had occurred for which the officers were not disciplined), "A

27

28
_____

[9]    Abrogated in part on other unrelated grounds, as recognized in *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008).

DEFENDANTS CITY OF NAPA, RICHARD MELTON AND GARTH BENDER'S MOTION
FOR SUMMARY JUDGMENT OR IN ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1  plaintiff cannot prove the existence of a *municipal* policy or custom based solely on the occurrence of

2  a single incident or unconstitutional action by a non-policymaking employee." Instead, a plaintiff

3  must present evidence that the municipal defendant's policymaker knew of unconstitutional conduct

4  by the subordinate *before the alleged constitutional violations ceased*. (*Christie*, 176 F.3d at 1239-

5  1240.)

6      Plaintiff has no evidence showing that Chief Melton or any other City official, approved

7  Officer Bender's actions and the bases for them, and nothing showing a "conscious affirmative

8  choice" to follow a particular course of action when faced with various alternatives. Plaintiff also

9  cannot establish any other similar instances in which constitutional rights were violated. Evidence

10  that Napa police officers may have responded to other domestic disputes involving an officer of some

11  jurisdiction, or even that involved officers were not arrested, is insufficient to show ratification for

12  purposes of *Monell* liability absent a showing that the officers' conduct in the unrelated cases resulted

13  in civil rights violations such that the City or Chief Melton may have approved or failed to prevent a

14  pattern of unconstitutional conduct.

15      The bases for plaintiff's *Monell* claim are not entirely clear, and to the extent she also claims

16  municipal liability based on a failure to train, such claims also are unsupported by any evidence. As

17  the Ninth Circuit recently explained:

18      To impose liability on a local government for failure to adequately train its
        employees, the government's omission must amount to "deliberate indifference" to a
19      constitutional right. This standard is met when "the need for more or different training
        is so obvious, and the inadequacy so likely to result in the violation of constitutional
20      rights, that the policymakers of the city can reasonably be said to have been
        deliberately indifferent to the need." . . .

21
        "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a
22      municipality-a 'policy' as defined by our prior cases-can a city be liable for such a
        failure under § 1983." . . . And only under such circumstances does the failure to train
23      constitute "a policy for which the city is responsible, and for which the city may be
        held liable if it actually causes injury." . . . Although this is a high standard, the
24      Supreme Court warned against diluting the requirement that a local government can
        be held liable only for an action or inaction that amounts to an official policy:
25
        In virtually every instance where a person has had his or her constitutional rights
26      violated by a city employee, a § 1983 plaintiff will be able to point to something the
        city "could have done" to prevent the unfortunate incident. Thus, permitting cases
27      against cities for their "failure to train" employees to go forward under § 1983 on a
        lesser standard of fault would result in *de facto respondeat superior* liability on
28      municipalities-a result we rejected in *Monell*.. It would also engage the federal courts

21

DEFENDANTS CITY OF NAPA, RICHARD MELTON AND GARTH BENDER'S MOTION
FOR SUMMARY JUDGMENT OR IN ALTERNATIVE PARTIAL SUMMARY JUDGMENT

in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism.

(*Clouthier, supra,* 591 F.3d at 1249-1250, (internal citations omitted), *citing City of Canton, supra,* 489 U.S. at 389-390.)

Plaintiff here has no evidence to establish "deliberate indifference" sufficient to support her municipal liability based on an alleged failure to adequately train Napa Police officers in handling domestic violence situations.  The evidence shows that Officer Bender received domestic violence training in the police academy and then every other year for the thirteen years before the incident.  Plaintiff has no evidence that the need for more or different training than Officer Bender received was "so obvious" and "so likely" to result in constitutional violations.  There is no evidence to support *Monell* liability based on a theory of inadequate training.

Plaintiff has no evidence to support a *Monell* liability claim against the City or Chief Melton under any theory.  Summary judgment should be granted in this regard.

**E.     The Undisputed Evidence Does Not Support A Claim For False Arrest Under State Law**

As developed at length above, Officer Bender cannot be liable because probable cause existed for plaintiff's arrest.  (*O'Toole v. Superior Court*, 140 Cal.App.4[th] 488, 511-512 (2006); Penal Code Section 847, "(b) There shall be no civil liability on the part of, and no cause of action shall arise against, any peace officer . . . for false arrest or false imprisonment arising out of any arrest . . . [where] (1) The arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful . . .".)  Summary judgment should be granted as to plaintiff's false arrest claim under state law.

**F.     The Undisputed Evidence Fails To Support A Claim For Intentional Infliction Of Emotional Distress**

Plaintiff has no evidence to show sufficiently egregious, intentional conduct by Officer Bender to establish liability for intentional infliction of emotional distress.  "The elements of a prima facie case of intentional infliction of mental distress are (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress."  (*Aquino v. Superior Court,* 21 Cal. App. 4th 847, 856 (1993), *Bogard v. Employers Cas. Co.* (1985) 164 Cal.

App. 3d 602, 616, *see also, Wong v. Tai Jing*, __ Cal.Rptr.3d__, 2010 WL 4457330 (2010).)  The undisputed evidence fails to show outrageous conduct by Officer Bender, or that he intended to cause plaintiff emotional distress or recklessly disregarded the probability emotional distress would result, particularly given that probable cause supported plaintiff's arrest.  Plaintiff's claim for intentional infliction of emotional distress is unsupportable and summary judgment should be granted.

**G.    Plaintiff's Negligence Claim Is Meritless**

It is well settled that "To prevail in an action for negligence, the plaintiff must demonstrate that the defendant owed a duty to the plaintiff, that the defendant breached that duty and that the breach proximately caused the plaintiff's injuries." (*John B. v. Superior Court*, 38 Cal.4th 1177, 1188 (2006.)  As discussed fully above, plaintiff's arrest was supported by probable cause based upon the totality of the circumstances known to Officer Bender at the time.  Plaintiff cannot establish that Officer Bender had any duty to divine information she refused to reveal, to investigate the matter in a different manner or to refrain from arresting her once probable cause was established.   The undisputed evidence fails to establish negligence liability against Officer Bender.

Moreover, Officer Bender is entitled to discretionary immunity under Gov. Code § 820.2, which provides that, "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."   "The Legislature has determined that government could not function if its employees were subject to liability for their discretionary acts, even where the discretion is exercised badly.  Such a rule necessarily causes individual hardship in those cases where discretion is exercised badly and the result is serious injury.  But this is a policy calculation the Legislature has made.  It is not the proper role of this court to countermand it." (*Ortega v. Sacramento County Department of Health and Human Services*, 161 Cal.App.4th 713, 716 (2008).)  Officer Bender's discretionary decision to arrest plaintiff based upon his assessment that she was the dominant aggressor in the situation is precisely the type of conduct Section 820.2 was intended to protect. (*Antique Arts Corporation v. City of Torrance*, 39 Cal.App.3d 588 (1974); *Watts v. County of Sacramento*, 136 Cal.App 3d 232 (1982); *McCarthy v. Frost*, 33 Cal.App.3d 872, 875 (1973) "A decision to arrest, or to take some protective action less drastic than

arrest, is an exercise of discretion for which a peace officer may not be held liable in tort.") Summary judgment as to plaintiff's negligence claim should be granted.

**H.      Plaintiff's Respondeat Superior Liability Claim Against The City And Chief Melton Fails For The Same Reasons Her Claims Against Officer Bender Fail**

As set forth above, plaintiff's claims against Officer Bender are unsupported by the undisputed evidence.  Her respondeat superior liability claim against the City and Chief Melton is derivative of Officer Bender's liability and fails for the same reasons.  (*See also,* Gov. Code § 815.2(b), the City likewise is immune from liability, "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.")

## IV.  CONCLUSION

For the foregoing reasons, the City of Napa, Chief Melton and Officer Bender submit that they are entitled to summary judgment on all claims, or in the alternative, partial summary judgment, or such other and further relief as the Court deems appropriate.

Dated:  November 12, 2010                  BERTRAND, FOX & ELLIOT


                                           By: _____/s/_____
                                              Attorneys for Defendants
                                              CITY OF NAPA, POLICE CHIEF RICHARD
                                              MELTON and OFFICER GARTH BENDER

DEFENDANTS CITY OF NAPA, RICHARD MELTON AND GARTH BENDER'S MOTION
FOR SUMMARY JUDGMENT OR IN ALTERNATIVE PARTIAL SUMMARY JUDGMENT