# EXHIBIT A

NPD CASE NUMBER

# NAPA POLICE DEPARTMENT
## WITNESS STATEMENT

NAME (LAST, FIRST, MIDDLE)

DATE OF BIRTH

DATE

HOME ADDRESS

HOME TELEPHONE NUMBER

TIME

BUSINESS ADDRESS

BUSINESS TELEPHONE NUMBER

I came home Durrard, Green was already inside my house he then became involved in a verb altercation

EXHIBIT

WITNESS                                  SIGNED

Scanned-LS

WITNESS

# EXHIBIT B





# EXHIBIT C







# EXHIBIT D

08-2329

## NAPA POLICE DEPARTMENT
## WITNESS STATEMENT

NAME (Last, First, Middle Name or Initial): Hernandez W3M

DATE OF BIRTH: 12/16/70

DATE: 4/3/08

HOME ADDRESS: 1919 Ceard Ct.

HOME PHONE NUMBER: 265-1165

TIME: 1900

BUSINESS ADDRESS:

BUSINESS PHONE NUMBER:

trying to contact him + not but
he was not interested in him her.
I used this opportunity to dial
911. Donald slapped the phone from
my hand and I started to yell
for help in case my 911 call had
been successful. Donald became
extremely upset twisted my left
arm + shoulder (internal rotation)
I screamed in pain + fell to the
ground. We continue to wrestle
+ he was restraining me with his
body. I continue to ask him to leave
+ to let me go. When the police
department arrived Donald stood
up and answered the door. I was
scared + still am scared. I wanted no
more problems as I already have a great
deal of stressors. I wanted the police
to take Donald away. I knew that
Donald would be terrified to lose his
job and adhere to police orders.
Donald knew he was not welcomed @ my home
He kicked me by parking around the corner
with every intent to surprise me with his
presence when I tried to leave he
restrain me causing pain.

WITNESS: [signature] #91

Hernande 3u3M    12/11/78    4/3/08
_____       _____    _____
name              DoB         Date

1919 cc Cair Ct   2-65-1165   1900
_____   _____   _____
Address           Phone #     time

sore area on my right temporal
area. He was under the influence
of some substance or substance
For sure, he was drinking alcohol
as he had 3 beers out of the
fridge (but only 2 opened)
    I am sorry I did not let you
know that Donald restraint me
& hurt me, I did not want him
to be in trouble. I am not a
criminal. Donald could have left
at anytime, I tried but,
could not leave.

Judith Burn #91           [signature]   3

Scanned-CH

# EXHIBIT E

CERTIFIED COPY

**DV-100**    **Request for Order**

Clerk stamps date here when form is filed.

# FILED

APR 0 8 2008

Clerk of the Napa Superior Court
By: _____
Deputy

1. Your name (person asking for protection):
Luz Hernandez

Your address *(skip this if you have a lawyer): (If you want your address to be private, give a mailing address instead):*
1919 Le Cair Court
City: Napa    State: CA    Zip: 94559
Your telephone number *(optional):* _____
Your lawyer *(if you have one): (Name, address, telephone number, and State Bar number):*
_____
_____
_____

*Fill in court name and street address:*

Superior Court of California, County of
Napa
825 Brown St.

Napa, CA 94559

*Clerk fills in case number when form is filed.*

Case Number:
26 - 41907

2. Name of person you want protection from:
Donald Allen Green

Description of that person: Sex: [X] M [ ] F Height: 6'0"
Weight: 160    Race: Wht    Hair Color: Brn
Eye Color: Brn    Age: 32    Date of Birth: 03/28/76

3. Besides you, who needs protection? *(Family or household members):*

| Full Name | Age | Lives with you? | How are they related to you? |
|---|---|---|---|
| Nicholas Zachary Wagener | 4 | [X] Yes [ ] No | Son |
| _____ | ___ | [ ] Yes [ ] No | _____ |
| _____ | ___ | [ ] Yes [ ] No | _____ |
| _____ | ___ | [ ] Yes [ ] No | _____ |

[ ] *Check here if you need more space. Attach Form MC-020 and write "DV-100, Item 3 - Protected People" by your statement. NOTE: In any item that asks for Form MC-020, you can use an 8 1/2 x 11-inch sheet of paper instead.*

I hereby certify the document herein
to be a true and correct copy of the
original on file with this court.

Dated: 12-1-09

Clerk of the Napa Superior Court

BY: _____

EXHIBIT

4. What is your relationship to the person in 2 ? *(Check all that apply):*
  a. [ ] We are now married or registered domestic partners.
  b. [ ] We used to be married or registered domestic partners.
  c. [ ] We live together.
  d. [ ] We used to live together.
  e. [ ] We are relatives, in-laws, or related by adoption *(specify relationship):* _____
  f. [X] We are dating or used to date.
  g. [ ] We are engaged to be married or were engaged to be married.
  h. [ ] We are the parents together of a child or children under 18:
     Child's Name: _____ Date of Birth: _____
     Child's Name: _____ Date of Birth: _____
     Child's Name: _____ Date of Birth: _____
  [ ] *Check here if you need more space. Attach Form MC-020 and write "DV-100, Item 4h" by your statement.*
  i. [ ] We have signed a Voluntary Declaration of Paternity for our child or children. *(Attach a copy if you have one.)*

**This is not a Court Order.**

Judicial Council of California, www.courtinfo.ca.gov
Revised July 1, 2007, Mandatory Form
Family Code, § 6200 et seq.     ESSENTIAL FORMS™

**Request for Order**
**(Domestic Violence Prevention)**

DV-100, Page 1 of 4

Your name: <u>Luz Hernandez</u>

<div style="border:1px solid">Case Number:</div>

⑤ **Other Court Cases**

  a.  Have you and the person in ② been involved in another court case? ☒ No ☐ Yes

     If yes, where? County: _____ State: _____

     What are the case numbers? *(If you know):* _____

     What kind of case? *(Check all that apply):*

     ☐ Registered Domestic Partnership ☐ Divorce/Dissolution ☐ Parentage/Paternity ☐ Legal Separation
     ☐ Domestic Violence ☐ Criminal ☐ Juvenile ☐ Child Support ☐ Nullity ☐ Civil Harassment
     ☐ Other *(specify):* _____

  b.  Are there any domestic violence restraining/protective orders now (criminal, juvenile, family)?
     ☒ No ☐ Yes  *If yes, attach a copy if you have one.*

## What orders do you want? Check the boxes that apply to your case.  ☑

⑥ ☒ **Personal Conduct Orders**

    I ask the court to order the person in ② not to do the following things to me or any of the people listed in ③ :

    a. ☒ Harass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, molest, destroy
        personal property, disturb the peace, keep under surveillance, or block movements

    b. ☒ Contact (either directly or indirectly), or telephone, or send messages or mail or e-mail

    *The person in ② will be ordered not to take any action to get the addresses or locations of any protected*
    *person, their family members, caretakers, or guardians unless the court finds good cause not to make the order.*

⑦ ☒ **Stay-Away Order**

    I ask the court to order the person in ② to stay at least <u>100</u> yards away from *(check all that apply):*

    a. ☒ Me
    b. ☒ The people listed in ③
    c. ☒ My home
    d. ☒ My job or workplace

    e. ☒ The children's school or child care
    f. ☒ My vehicle
    g. ☐ Other *(specify):* _____

    If the person listed in ② is ordered to stay away from all the places listed above, will he or she still be able
    to get to his or her home, school, job, or place of worship? ☒ Yes ☐ No *(If no, explain):* _____
    <u>We work at the same place but in different departments.</u>

⑧ ☐ **Move-Out Order**

    I ask the court to order the person in ② to move out from and not return to *(address):*

    _____

    I have the right to live at the above address because *(explain):* _____

⑨ ☐ **Child Custody, Visitation, and Child Support**

    I ask the court to order child custody, visitation, and/or child support. *You must fill out and attach*
    *Form DV-105.*

⑩ ☐ **Spousal Support**

    *You can make this request only if you are married to, or are a registered domestic partner of, the person in ②*
    *and no spousal support order exists. To ask for spousal support, you must fill out, file, and serve Form FL-150*
    *before your hearing.*

<div style="background:black;color:white;text-align:center">This is not a Court Order.</div>

Your name: Luz Hernandez

Case Number: _____

## What orders do you want? Check the boxes that apply to your case.  ☑

**(11)** ☒ **Record Unlawful Communications**
I ask for the right to record communications made to me by the person in ② that violate the judge's orders.

**(12)** ☐ **Property Control**
I ask the court to give *only* me temporary use, possession, and control of the property listed here:
_____

**(13)** ☐ **Debt Payment**
I ask the court to order the person in② to make these payments while the order is in effect:
☐ *Check here if you need more space. Attach Form MC-020 and write "DV-100, Item 13 - Debt Payment"
by your statement.*

Pay to: _____ For: _____ Amount: $_____ Due date: _____
Pay to: _____ For: _____ Amount: $_____ Due date: _____
Pay to: _____ For: _____ Amount: $_____ Due date: _____

**(14)** ☐ **Property Restraint**
I am married to or have a registered domestic partnership with the person in ② . I ask the judge to order that the
person in ② not borrow against, sell, hide, or get rid of or destroy any possessions or property, except in the
usual course of business or for necessities of life. I also ask the judge to order the person in ② to notify me of
any new or big expenses and to explain them to the court.

**(15)** ☐ **Attorney Fees and Costs**
I ask that the person in ② pay some or all of my attorney fees and costs.
*You must complete and file Form FL-150, Income and Expense Declaration.*

**(16)** ☐ **Payments for Costs and Services**
I ask that the person in ② pay the following:
*You can ask for lost earnings or your costs for services caused directly by the person in ② (damaged
property, medical care, counseling, temporary housing, etc.). You must bring proof of these expenses to your
hearing.*

Pay to: _____ For: _____ Amount: $_____
Pay to: _____ For: _____ Amount: $_____
Pay to: _____ For: _____ Amount: $_____

**(17)** ☐ **Batterer Intervention Program**
I ask the court to order the person listed in ② to go to a 52-week batterer intervention program and show
proof of completion to the court.

**(18)** ☐ **No Fee to Serve (Notify) Restrained Person**
*If you want the sheriff or marshal to serve (notify) the restrained person about the orders for free, ask the court
clerk what you need to do.*

**This is not a Court Order.**

Revised July 1, 2007

**Request for Order**
**(Domestic Violence Prevention)**

DV-100, Page 3 of 4
→

Martin Dean's
ESSENTIAL FORMS™

Your name: Luz Hernandez _____

<div style="border:1px solid;">
Case Number:
</div>

## What orders do you want? Check the boxes that apply to your case.  ☑

☐ **More Time for Notice**

I need extra time to notify the person in ② about these papers. Because of the facts explained on this form, I want the papers served up to _____ days before the date of the hearing. *For help, read Form DV-210-INFO.*

*If necessary, add additional facts:* _____

**(20)** ☐ **Other Orders**

What other orders are you asking for? _____

☐ *Check here if you need more space. Attach Form MC-020 and write "DV-100, Item 20 – Other Orders" by your statement.*

**(21)** **Guns or Other Firearms**

I believe the person in ② owns or possesses guns or firearms. ☐ Yes  ☒ No  ☐ I don't know

*If the judge approves the order, the person in* ② *will be required to sell to a gun dealer or turn in to police any guns or firearms that he or she owns or possesses.*

**(22)** Describe the most recent abuse.

a.  Date of most recent abuse: See attached statement _____

b.  Who was there? See attached statement _____

c.  What did the person in ② do or say that made you afraid?
See attached statement _____
_____
_____
_____
_____
_____

d.  Describe any use or threatened use of guns or other weapons: _____

e.  Describe any injuries: See attached statement _____

f.  Did the police come? ☐ No  ☒ Yes
If yes, did they give you an Emergency Protective Order? ☐ Yes  ☒ No  ☐ I don't know
*Attach a copy if you have one.*
☐ *Check here if you need more space. Use Form MC-020 and write "DV-100, Item 22 – Recent Abuse" by your statement.*
☐ *Check here if the person in* ② *has abused you (or your children) other times. Use Form DV-101 or Form MC-020 to describe any previous abuse.*

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: 04/08/08

Luz Hernandez _____     ► _____
*Type or print your name*                          *Sign your name*

**This is not a Court Order.**

Revised July 1, 2007

*Martin Dean's*
ESSENTIAL FORMS™

**Request for Order**
**(Domestic Violence Prevention)**

About 4:30 pm Donald Allen Green & I were involved in a verbal altercation which resulted in a break-up. This arguement took place at Napa State Hospital (where we both work), in my car which was parked outside his assigned kiosk. I told Donald I no longer wanted to be involved in a relationship which had no trust. Initially, Donald argued against the break-up & took my keys out of the ignition of my car & stated "I am not going to let you do this, this time". We argued for a minute or two, which ended when Donald threw my keys on my lap & walked away. Came out of my car and took my garage door remote from his car which was parked by mine. I live 5 minutes from NSH, I went home assured all my doors were locked then changed my cell phone number. I then returned to work. I left work & crossed the sally port about 9:45 pm. I recall saying bye to officer Richard Danner, an old friend of mine & the gate keeper for the evening. I purposely left work before 10:00 pm as Donald's shift ends at 10:00 pm & I wanted to assure I was locked inside my home before blocking an opportunity to have Donald meet me outside my home. I had planned to go inside my house (& placing my car in the garage) & turn off all lights as if no one was home so as if Donald came

1. possible conversation with Donald. In the past, when I have broken-up with Donald he was came over my home & begged to be let inside my house & take him back. Once, when I lived in a condo, he begged outside my door for over an hour. Donald's persistence can be exhausting & often breaks me. I arrived @ my house about 950 pm. Donald's car was not parked in my driveway nor in front of my house; I did not know he was at my home. Later, I found that he had parked around the corner. When I came inside my house I noticed my that's bedroom TV to was on. Although, it is not unusual for me to leave the TV on before leaving my home, it is unusual to have my TV stationed on a sports channel. Before I could react to my TV being on a sports channel, Donald came out of the bathroom with an unsteady gait & slurred speech. I had no idea how he had entered my home as I had taken the garage door remote open er that I had let Donald to borrowed. Donald was wearing only his underwear & had a pair of scissors on his hand. I asked what he was doing & he answered in a slurred speech that he was cutting his moles as he knew that I did not like them. He pointed to the right side of his torso where & I noticed a small amount of bleeding from a half-way cut mole.

with the obvious signs of intoxication was
enough to scare me. I noticed 2 opened
beer bottles on my bathroom sink, but they
were both almost full. I was confused &
did not understand how Donald had
managed to "use" (whatever, alcohol, drugs)
if he was suppose to be at work until 10$^{00}$ pm
I asked Donald to leave. He then stembled
towards me and tried to hug me while statin
" I just want to talk to you." I ran tward
the front door, but Donald grabbed me
with both of his arms from behind. we both
fell to the ground. I tried to get away. I
told him to let me go and that I wanted to
leave. I asked him to leave, but he would not
'let me go'. we continue to wrestle. I can
not reall every detail I do remember that
occasionally Donald would let me sit, but
if I tried to get up +/or crawl out of the
room, he would once again get onto of me
and had me with both hands to prevent me
from leaving. on several occasions he would
become irritated and he would shake me
& yell at me. once he shook me causing me
head to hit the side of my night table causin
a lump on the    Left side of my head. I
convinced him to let me use the phone to let
me call a girl name sherie wham works
in unit Q-11 to confirm Donald's account
of events that initially lead to our
arguement earlier this day. I took this
opptunity to dial 911, but Donald slapped

for help in case the phone call I had been
successful. Donald became angry, shook
me and we re-started wrestling. On an
occasion he grabbed my left arm and
internally rotated my arm while adding
pressure to my left shoulder. This was
painful, I began to scream out in pain,
dropped to the floor and he let go of his
had. At this point I started fighting,
kicking, slapping, yelling & swearing.
I told him that I would never get back
together with him, that I had had enough,
that I hated him, that I wanted him to
leave my house. He too yelled, accused
me of wanting and seeking other men. He
was on top of me, accusing me of sleeping
with a male friend of mine name Josh. I
told him that I had not slept with him, but
if I had, I would gladly tell him to hurt him
He continue with his accusations while remain
on top of me when the door bell rang. It was
the police. As soon as the police entered my
home the police seperated Donald and I.
I was escorted into my room and asked if
I was OK. I was sweaty & had red marks
on my wrists. I had a long sleeve
sweater and the marks on my arms
were not visible. I was scared, wanted
no more problems but wanted Donald to leave
my house. I chose not to say too much.
I did say I had dialed 911, that the house

house, that Donald did not live with me. I also mentioned on a couple occasions that Donald and I had broken up earlier that day and that I had called the cops on an other occasion. I did not describe the physical altercation. I did repeatedly requested that Donald be taken away from my house. Last time I called the police on Donald he was driven to a hotel room because he was once again too intoxicated to drive. Donald was scared and adhered to police order by not returning that night.

Donald tricked me by parking around the corner and not in front of my house. If I had known Donald was waiting inside my name I would have not entered my house. Donald broke into my house, he was intoxicated, he was violent and prevented me from leaving my home yet he was driven by the police to a hotel room while I was taken to jail and booked. There was little justice that night

4|4|08
I unplugged my phone

4|5|08
My phone remained unplugged.

April 2nd - Wednesday

I was at home in the evening confused why I had to respond to charges when Donald was the one who broke into my home, intoxicated & assaulted me. I called him only once to ask him questions, but he did not answer the phone.

April 3rd Thursday

I called officer Bender (#91) and asked him if I could add my side of the story to his report. He agreed and came by with report paper. He stated that he would return for my written statement within in about 1 hour or so. The phone rang & I answered. It was Donald apologizing for what he had reported. He stated he was told by the Napa police that I had made many accusations and that he went into a "survival mode" & if it was between "saving himself" or I he would "save himself." I told him that if he had answered the questions I had and to please not call me ever again. He called several times after that, I answered a few as I was still waiting for officer Bender to

Call (?) Donald
that I had every intention in seeking
a restraint order. I told him to leave
me alone and that if I needed anything
my family and friends would assist me
Donald insisted on coming over my house
"for a couple of hours" he insisted, I
"needed a hug". I continue to remind
him I had of family & friends. He
continue to call me that night, a few
times he left messages other times
he would hang-up when my answering
machine would pick up. Officer Bender
was in my home on an occasion when
Donald was leaving a message and I
told him that, that was Donald on the
answering machine and that he had
called numerous times. Officer Bender
advised me to place a restraint order
and gave me a hand-out on
domestic violence.

Around 10$^{15}$am I heard my door bell, since I
was still in bed, I ignored it. The door bell ran
several times and often it was followed by door
knocks. After a couple of minutes I walked to
the front door and looked out side through my
blinds & noticed Donald Allen Green at my
front door. I had asked Donald to no longer
call me and to leave me alone, so I
did not answer the door and returned to
bed. He continued to knock and ring my
door bell for another minute or so then
finally stopped.

Around 10$^{30}$am, the door bell ringing &
door knocking started again. I once
again saw Donald Green through my
blinds and once again returned to bed
without answering the door. This
continued for about 2 or 3 minutes
then finally stopped.

Throughout the day & night the
phone rang, but the person would
hang up as soon as the recorder
would pick-up.  I did

Around 10$^{15}$ am I heard my door bell, since I was still in bed, I ignored it. Door bell rang several times + often it was followed by door knocks. After a couple of minutes, I walked to the front door and looked out my blinds and noticed Donald Allen Green at my front door. I had asked Donald to leave me alone, so I did not answer the door + returned to bed. He continued to knock + ring my door bell for another minute or so, then finally stopped.

Around 10$^{30}$ am the door bell ringing and door knocking started again. I once again saw Donald Green through my blinds and once again returned to bed without answering the door. This continued for about 2 or 3 minutes then finally stopped.

Throughout the day + night the phone rang but the person would hang up as soon as the [answering?] machine would pick up. I did

not answer the phone because
I feared that the caller would
be Donald.    If a friend or
family member was the one calling
throughout the day, he or she
would leave a message or call
me on my cell phone. Donald
is the reason why I changed
my cell phone number, thus he
does not have my number. I
do not have Caller ID on my
house phone, so I am unable to
claim that Donald made all
those phone calls, but his cell phone
or cell phone bill likely has
records of the multiple times
he has called me despite the
fact that I have asked him to
leave me alone. I do have
record: recordings of a few
messages he has left on
my home machine. Please note
those messages are also

Donald to cease all contact
with me or my family.

It has come to my attention
that Donald's ex-wife placed
a restraint order against him
in Solano County. I also
understand that a nurse at
Queen of the valley hospital
called Napa State Hospital Police
Department to complaint of Donald's
annoying & stalking-like behavior.

4/8/08

# EXHIBIT F

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF NAPA

The Honorable MICHAEL S. WILLIAMS, Commissioner

--oOo--

**ORIGINAL**

LUZ HERNANDEZ,

               Plaintiff,

      vs.

DONALD GREEN,

              Defendant.

No. 26-41907

--oOo--

REPORTER'S TRANSCRIPT OF PROCEEDINGS
HAD AT TIME OF HEARING

--oOo--

Napa, California
Thursday, May 1, 2008
8:30 o'clock a.m.

--oOo--



Reported by:

SUSAN L. STRAUB, CSR No. 7608

NAPA COUNTY OFFICIAL REPORTERS
1111 Third Street, Suite 330
Napa, California 94559
(707) 299-1193

1   of him by myself.

2   Q.      What happened after you looked through the blinds?

3   What happened?

4   A.      He left.  And 15 minutes later he came back and he

5   started knocking again.  And I saw that it was him.  I

6   didn't answer the door.  I went back to bed.

7   Q.      Did you have any other contact with him after that?

8   A.      No.  He called my sister one time.

9   Q.      So you are saying that you were having a

10  conversation with some officer named Bender?

11  A.      Garth Bender.

12  Q.      And when you are having this conversation, what was

13  going on with the phone?

14  A.      It kept ringing and ringing and ringing and I told

15  him, that is Donald.  And he said, maybe you should get a

16  restraining order and went to his car and got me a domestic

17  violence handout.

18  Q.      That is how you became aware that you had the right

19  to file a restraining order in this case?

20  A.      I was already going to file a restraining order but

21  I had to wait until somebody told him I was going to file a

22  restraining order.

23  Q.      Why do you think --

24  A.      He --

25  Q.      Hold on.  If I could have a minute, I will rap this

                                                              30

1    up.
2              So you did fight, kick and slap Mr. Green;
3    right?
4    A.      Yes.   Yeah.
5    Q.      And why did you do that?
6    A.      That was right after he was twisting my arm. That is
7    right after he did the internal rotate action, pop of my
8    shoulder, and pushed me against the wall, and it hurt.   It
9    was very painful.
10    Q.     Did you throw any punches against him before he
11    touched you?
12    A.     No.
13    Q.     Did you push him?
14    A.     No.   When he was on top of me, I was trying to get
15    him off of me.
16    Q.     Okay.   When you saw him in the bathroom and standing
17    there in his underwear and bleeding, did you push him in
18    anyway?
19    A.     No.
20    Q.     What did you do when you saw him standing there in
21    his underwear naked had bleeding?
22    A.     When he started coming toward me, I ran.
23    Q.     Let me ask you another question.
24              Did you know his ex-wife, Michelle Green?
25    A.     I don't know her in person.   I know about her.

                                                            31

1   fell to the floor.  When I was in a lot of pain, I fell to

2   the floor and then I turned around and I started fighting

3   him back.  I was able to either crawl into my room and in

4   my room he got on top of me and he had me face down and

5   yelling at me.

6               "I know you memorized somebody's number.

7   You want an eight-inch dick."  Just yelling and yelling and

8   that is when the cops showed up.

9   Q.    What happened next?

10  A.    They knocked, Donald got off of on top of me and

11  opened the door for them.

12  Q.    Was he still in his underwear?

13  A.    Yeah.

14  Q.    Bleeding?

15  A.    Yes.  Body still bleeding.  His mole was huge -- or

16  is huge.

17  Q.    And what happened next?

18  A.    They separated us.  Mostly they were talking to him

19  and I was in my room and they kept going back and forth.

20  What arm?  What happened?  I got really scared and I wasn't

21  saying anything.  I was really quiet.  I said "nothing,"

22  and, obviously, something happened.  I was so sweaty.  My

23  sweater has a rip.  My arms are all red.  Obviously,

24  something happened.

25               And they kept asking me.  I said "nothing."

                                                      26

1   They were with Donald, like, 45 minutes and kept saying,

2   What is going on?  What is going on?  And the next thing

3   you know, he left and they handcuffed me and they said that

4   with all of the evidence, we are going to book you.

5   Q.     Was there any discussions about whether or not Mr.

6   Green lived at your house?

7   A.     There was a lot of discussion.

8   Q.     What was that about?

9          Did the cops ask if he lived with you?

10  A.     They said, you own this house by yourself?  I said,

11  yes, I do.  And Donald doesn't help you?  I said nope.

12  Q.     Did you tell the police that he did not have the

13  lawful right to your house?

14  A.     I explained that he broke in and made himself at

15  home.  I called you before and you drove him down to a

16  hotel room.  He could barely talk.  He was slurring and he

17  flashes his badge and they take him down to a hotel room.

18         The second time I called, I need this

19  restraining order because I have no other protection

20  against him.  He keeps flashing his card.  And he smokes

21  weed.  He smokes like five joints a day.

22  Q.     You have to proceed through question and answer.  I

23  know this is very difficult.

24         So you went to jail?

25  A.     Yeah, they took me to jail.

                                                          27

```
 1   STATE OF CALIFORNIA      )
                              )    ss.
 2   COUNTY OF NAPA           )

 3

 4              CERTIFICATE OF SHORTHAND REPORTER

 5              I, SUSAN L. STRAUB, CSR No. 7608, a duly

 6   qualified and acting Official Shorthand Reporter of the

 7   Superior Court of the State of California, in and for the

 8   County of Napa, do hereby certify:

 9              That I acted as the Certified Shorthand

10   Reporter in the Matter of HERNANDEZ vs. GREEN, NSC NO.

11   26-41907.

12              That I took down in shorthand writing the

13   testimony and proceedings had therein.

14              That thereafter I transcribed the same into

15   typewriting.

16              That the foregoing pages comprise a full, true

17   and correct transcript of proceedings had.

18              Dated this 20th day of June, 2008.

19

20

21

22              _____
                SUSAN L. STRAUB, CSR No. 7608
23              Official Shorthand Reporter
                County of Napa,
24              State of California

25              --oOo--

                                                            77
```

# EXHIBIT G

Revised: 10-July-03

Napa Police Department

General Order 91-12

SUBJECT: DOMESTIC VIOLENCE



EXHIBIT
12 Bender
7-15-10

## I. PURPOSE

The purpose of this General Order is to establish procedures for the Napa Police Department for handling domestic violence incidents and complaints.

## II. POLICY

It is the policy of the Napa Police Department to treat domestic violence as criminal conduct. Mer of the department shall enforce applicable laws to protect victims of domestic violence. The Napa Police Department recognizes that a call for assistance in a domestic violence situation is the sam any other request for assistance where violence has occurred.

## III. PROCEDURE

A. DEFINITIONS

    1. DOMESTIC VIOLENCE: Per Penal Code section 13700, domestic violence is abuse committed against an adult or a minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a child or is having or has had a dating or engagement relationship.

    2. ABUSE: Intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another.

B. FELONY ARRESTS

    1. Shall be made when there is reasonable cause to believe that a felony has occurred.

    2. Dual arrests are discouraged, but not prohibited when appropriate. Pursuant to section 13701(b) PC, officers shall make reasonable efforts to identify the dominant aggressor in any incident.

        a. The dominant aggressor is the person determined to be the most significant, rather than the first aggressor.

        b. In identifying the dominant aggressor, an officer shall consider the intent of the law to protect victims of domestic violence from continuing abuse, the threats creating fear of physical injury, the history of domestic violence between the persons involved, and whether either person acted in self-defense.

C. MISDEMEANOR ARRESTS

    1. Shall be made when there is reasonable cause to believe that a misdemeanor has been committed whether in the presence of an officer or not.

    2. 243(e)(1) PC is a "misdemeanor exception" and does not require commission in the presence of an officer. This section applies to spouse, former spouse, current and former cohabitants and parties with a child in common and is to be used when there is no visible evidence of injury. This section also applies to current and former dating and

12-1

current and former engagement relationships whether or not injury has occurred. These relationships are not protected under 273.5 PC. Pursuant to section 836(d)(1), an officer may arrest the suspect without a warrant where both of the following circumstances apply.

   a.  The officer has probable cause to believe that the person to be arrested has committed the assault or battery, whether or not it has, in fact, been committed.

   b.  The officer makes the arrest as soon as probable cause arises to believe that the person to be arrested has committed the assault or battery, whether or not it has, in fact, been committed.

3.   273.6 PC (Violation of a domestic violence protective order) is another misdemeanor exception and does not require commission in the presence of an officer. Pursuant to section 836(c)(1) an officer shall make an arrest for a violation of a domestic violence protective order and take the person into custody whether the violation occurred in the officer's presence or not. For procedures involving verification of protective orders, refer to General Order 91-11. This order also outlines the procedure for serving suspects with protective orders.

   a.  In situations where mutual protective orders have been issued, liability for arrest applies to that party who willfully and knowingly violated the court order.

4.   Releasing a domestic violence suspect on a citation is strongly discouraged because of the likelihood of a continuing offense.

5.   Both the above listed sections can be and often are enforced without a private person's arrest and against the wishes of the victim. In other misdemeanor situations, an officer should advise the victim or witness of their rights to make a private person's arrest. If the party refuses, the officer should complete an Arrest/Detention/Charges form and send the completed report to the District Attorney's Office for review.

## D.   EMERGENCY PROTECTIVE ORDERS

1.   Emergency Protective Orders (EPOs) shall be obtained when, in the judgment of an officer, a person is in immediate and present danger of domestic violence by a family or household member.

   a.  Peace officers request an EPO when they believe it is necessary to prevent the occurrence or recurrence of domestic violence, child abuse, child abduction, stalking, or elder abuse.

   b.  Officers seeking an EPO shall complete the EPO affidavit form, and then contact the on-call judicial officer. The officer shall review the affidavit information and conditions requested with the judicial officer, who will grant or deny the EPO.

## E.   FIREARMS

1.   Officers shall confiscate firearms and other deadly weapons lawfully secured during domestic violence incidents and process them for safekeeping pursuant to departmental protocol and Penal Code section 12028.5. Receipts will be issued for all confiscated firearms. Lawfully means the items were located by plain view, consensual search, or other exigent circumstances. If the officer reasonably believes such weapons are in the house in a location otherwise inaccessible to the officer, he or she should consider pursuing a search warrant.

12-2

F.  PHOTOGRAPHS

1.  Officers shall photograph all visible injuries.

2.  Victims should be advised that injuries can become more visible with the passing of time and that they should contact the department for follow-up photos to be taken by either the original reporting officer or any other available officer.

G.  VICTIM ASSISTANCE

1.  The officer shall assist in obtaining appropriate medical attention if a complainant claims injury whether visible or not. The officer will have the victim sign a medical information release form for use by this Department or by the District Attorney's Office.

2.  The officer shall assist in making arrangements to transport the victim to an alternate shelter if the victim expresses a concern for safety or the officer determines a need exists.

3.  The officer will stand-by for a reasonable amount of time when a complainant requests police assistance while removing essential items of personal property and provide safe passage out of the residence.

4.  The officer shall explain legal options available to the victim including the private persons arrest process, temporary restraining and stay-away orders, and in cases of arrest, the follow-up procedures and ensuing criminal proceedings. This information is contained in the NPD Domestic Violence Information Pamphlet.

5.  The officer shall advise the victim of available community resources and the State Victim Assistance Program.

H.  REPORTING

1.  A report shall be written in all incidents of domestic violence and threats of domestic violence and will be identified on its face as a domestic violence incident. PC 273.5 reports will include a Penal Code Section 293 form.

2.  The report shall identify whether or not weapons were involved.

3.  The officer shall provide the victim with the case number of the report.

4.  The officer shall indicate in the narrative that the victim was given a "Domestic Violence" pamphlet and its contents were explained.

5.  When an officer responds to a domestic violence incident and the victim refuses information and/or assistance, a report shall be written indicating such refusal.

I.  OFFICER SAFETY

1.  Officers shall exercise reasonable care for the safety of officers and parties involved and no provision of the order shall supersede that responsibility.

J.  PERTINENT PENAL CODE SECTIONS

1.  The following Penal Code sections should be considered during the investigation of domestic violence incidents. This list is not intended to be all-inclusive but is merely a guide to violations that commonly occur during domestic violence incidents.

12-3

3

| | Intimidation or dissuasion of victim or witness/ to report or testify |
|---|---|
| 136.1 | Possessing a weapon with the intent to intimidate a witness |
| 136.5 | Inducing or influencing testimony |
| 137(a) & (b) | Mayhem |
| 203 | Kidnapping |
| 207 | False imprisonment |
| 236 & 237 | Assault with intent to commit sexual assault |
| 220 | Battery with serious injury |
| 243(d) | Assault with a deadly weapon or force likely to produce great bodily harm |
| 245 | Shooting into an inhabited dwelling |
| 246 | Rape |
| 261 | Rape of spouse |
| 262 | Cruelty to child |
| 273(a) | Corporal injury/spouse, former spouse, cohabitant, former cohabitant, parties |
| 273.5 | with a child in common |
| | Child stealing |
| 278 | Elder abuse |
| 368 | Criminal threats |
| 422 | Burglary |
| 459 | Damage to telephone/power/electrical/cable equipment |
| 591 | Stalking |
| 646.9 | Possession of a firearm while subject to domestic violence court protective |
| 12021(g) | order |
| | Brandishing deadly weapon |
| 417 | Resisting/delaying/obstructing officers |
| 148 | Contempt of court order (violation of court orders, out-of-state court orders, |
| 166(a)(4) | stalking EPO's) |
| 166c(1) | Contempt of court order (violation of criminal stay-away orders issued in domestic violence proceedings, violation of probation after domestic violence conviction) |
| | Assault/battery |
| 240/242 | Battery upon current/former spouse, current/former cohabitant, parent of |
| 243(e) | defendant's child, current/former dating partner of defendant, party current/formerly engaged to defendant |
| 273.6 | Violation of domestic violence protective order (includes domestic violence TRO, RO, and domestic violence EPO's) |
| | Disturbing the peace |
| 415 | Forcible entry to land, property of another |
| 418 | Vandalism (includes community property) |
| 594 | Cruelty to animals/killing pets |
| 597 | Trespassing |
| 602.5 | Forcible entry and unauthorized destruction of property |
| 603 | Intoxicated/under the influence in public |
| 647f | |

10-July-03

Daniel R. Monez
Chief of Police

Distribution: All Personnel

12-4