Kimberly E. Colwell, Esq. (SBN: 127604)
kcolwell@meyersnave.com
Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@meyersnave.com
MEYERS, NAVE, RIBACK, SILVER & WILSON
555 12th Street, Suite 1500
Oakland, CA  94607
Telephone: (510) 808-2000
Facsimile: (510) 444-1108

Attorneys for Defendant
COUNTY OF NAPA DEPUTY SHERIFF JOHN HALLMAN

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NAPA, a municipal corporation; RICHARD MELTON, in his capacity as Chief of Police for the CITY OF NAPA; OFFICER GARTH BENDER, individually and in his capacity as a police officer for the CITY OF NAPA; OFFICER RYAN COLE, individually and in his capacity as a police officer for the CITY OF NAPA; OFFICER RYAN HIBBS, individually and in his capacity as a police officer for the CITY OF NAPA; DONALD GREEN, individually and acting as a co-conspirator in conjunction with Defendant Police Officers for the CITY OF NAPA; JOHN HALLMAN, individually and in his capacity as a Deputy Sheriff for the COUNTY OF NAPA; and DOES 1-30,<br><br>Defendants. | Case No: C 09-02782 EDL<br><br>**DEFENDANT COUNTY OF NAPA DEPUTY SHERIFF JOHN HALLMAN'S TRIAL BRIEF**<br><br>TRIAL:      June 4, 2012<br>TIME:       8:30 a.m.<br>DEPT:       Courtroom E, 15th Floor<br>JUDGE:    Honorable Elizabeth D. Laporte |

Defendant COUNTY OF NAPA DEPUTY SHERIFF JOHN HALLMAN (hereinafter "Deputy Hallman") submits the following trial brief.

## I.      INTRODUCTION

Plaintiff's Complaint arises following an incident on or about April 1, 2008.  According to Plaintiff's allegations, she phoned 9-1-1 related to an incident involving her ex-boyfriend, Defendant Donald Green.  In summary, Plaintiff alleges that all Defendants, including Deputy Hallman, are liable for their failure to protect Plaintiff from her ex-boyfriend (Green) as well as her arrest for assaulting Green during the incident giving rise to this litigation.

Following two Motions to Dismiss, Plaintiff filed a Second Amended Complaint which significantly reduced the claims asserted against Deputy Hallman to a single cause of action for civil rights violations under 42 U.S.C. Section 1983 (first cause of action in the Second Amended Complaint).  Plaintiff alleges in that cause of action to have been subjected to an unreasonable search and seizure, as well as being the victim of a conspiracy by the officers related to her arrest.  Deputy Hallman subsequently filed a Motion for Summary Judgment which further reduced the claims against him to only one for conspiracy under Section 1983.  In reaching that conclusion, the Court has found that Deputy Hallman was not integrally involved in Plaintiff's arrest.

## II.     FACTUAL BACKGROUND

This matter arises secondary to a call for police assistance in the evening hours of April 1, 2008.  However, prior to delving into the actual incident giving rise to this litigation, a brief history pertaining to the relationship between the City of Napa Police Department and the Napa County Sheriff's Department is necessary.

Although the City of Napa Police Department and the Napa Sheriff's Department are each separate legal entities, their coverage and service area is coterminous.  Similarly, dispatching for the Napa County Sheriff's Department has been contracted to the City of Napa.  Based upon the coterminous coverage as well as the joint dispatch operations for the two entities, any police calls provided to City of Napa police officers would also be heard by County of Napa.  Similarly, the two entities provide assistance to one another when necessary or appropriate.

///

Def Co/Napa Deputy John Hallman's Trial Brief [09-02782 EDL]

On the evening in question Plaintiff returned to her home to find her ex-boyfriend, Defendant Green, inside.  Following a verbal altercation which rapidly escalated to a physical fight between the two, Plaintiff called 9-1-1 for police assistance.  (See Plaintiff's Second Amended Complaint, hereinafter SAC, at ¶¶ 11, 13.)  When Plaintiff phoned 9-1-1, Defendant Green slapped the phone out of her hands thereby restricting her ability to report the incident.  (SAC at ¶ 13.)  Plaintiff simply started yelling for help in the hope that the phone call had been successful.  (SAC at ¶ 13.)

As a result of the 9-1-1 call, the dispatcher assigned City of Napa Police Officer Garth Bender and two other City of Napa officers to report to Plaintiff's residence.  However, the other two units were some distance away and were anticipated to be delayed in their arrival.  As a result of these facts, Deputy Hallman, County of Napa Sheriff's Officer, volunteered to self-assign to the location in order to provide duties commensurate with his position as a cover officer to Officer Bender until such time as the other City of Napa officers had arrived.

Officer Bender and Deputy Hallman arrived at Plaintiff's residence at approximately the same time.  Before entering the home, Deputy Hallman activated a digital voice recorder worn on his person that recorded the entirety of the incident giving rise to this litigation.

After activating his audio recorder, Deputy Hallman and Officer Bender approached Plaintiff's residence and knocked on the door.  While standing outside and before the door opened, the officers were able to hear male and female voices arguing inside.  (SAC at ¶ 15.)  Immediately after entering the house, Deputy Hallman and Officer Bender separated Plaintiff Hernandez and Defendant Green, with Deputy Hallman escorting Plaintiff into her bedroom at the rear of the house.  (SAC at ¶ 15.)

Deputy Hallman's entire involvement with Plaintiff lasted approximately two to three minutes.  During that time, Hallman was with Plaintiff in her rear bedroom where he proceeded to ask her what had happened and whether she was okay.  Deputy Hallman also attempted to gather routine information such as Plaintiff's name to provide to the investigating officers with the City of Napa Police Department.

During his initial contact with Plaintiff, Deputy Hallman was able to observe that Plaintiff's wrists were red and that Plaintiff had spit something into her bathroom sink which appeared red in color.  After approximately two or three minutes, Deputy Hallman was relieved by another City of

Def Co/Napa Deputy John Hallman's Trial Brief [09-02782 EDL]

Napa Officer (either Officer Hibbs or Cole), with Deputy Hallman providing that officer with the information he obtained through his observations and discussion with Plaintiff. Deputy Hallman then exited Plaintiff's bedroom and went to the front room of Plaintiff's home where he remained for the duration of the incident, with no further involvement, interaction or discussion with Plaintiff from that point on.

As Officer Bender's investigation proceeded, he obtained statements which suggested Green had been physically assaulted by Plaintiff. These facts were confirmed by physical evidence, including Defendant Green having scratch marks across his chest as well as the house being in disarray from the altercation. By comparison, Officer Bender was unable to obtain any information from Plaintiff, who instead continually stated that, "nothing happened" and that she was not injured. In fact, Plaintiff prepared a handwritten statement following this incident which simply stated that, "I came home Donald Green was already inside my house. We then became involved in a verb [sic] altercation." There was absolutely no reference in this statement to her being assaulted.

Defendant Green also prepared a formal written statement that alleged Plaintiff had physically pushed and attacked him. Plaintiff's deposition testimony was that she did, in fact, punch Green in the chest. Based upon these facts, Officer Bender made the determination that there was sufficient probable cause to arrest Plaintiff for violation of Penal Code Section 243 (domestic violence) and proceeded to arrest and transport Plaintiff to the Napa County Detention Center where she was booked without incident.

Once Officer Bender made the decision to arrest Plaintiff, he requested that Defendant Green be removed from the residence. Such actions are standard protocol both as a result of Defendant Green not living at the home as well as to assure the parties are separated and no further arguments or altercations erupt while one party is being escorted out of the home in handcuffs. Defendant Green appeared to potentially be intoxicated based upon objective signs including red watery eyes, slurred speech and the presence of empty alcohol bottles around the residence. Thus, Deputy Hallman provided a ride to Defendant Green.

///

///

1    Plaintiff has alleged that Deputy Hallman's failure to intervene and stop her arrest by Officer

2    Bender as well as Deputy Hallman's transporting of Defendant Green away from Plaintiff's residence

3    somehow was a violation of her civil rights, or in the alternative was somehow a conspiracy.

4    However, Plaintiff has not submitted any facts to support either of these theories.  During her

5    deposition, Plaintiff testified that Deputy Hallman's report to the Napa officers was performed in front

6    of her and out loud, without any attempt to conceal their discussion.  She has also confirmed that

7    Deputy Hallman passed on his observations of her red wrists and spitting something red into the sink.

8    Plaintiff has conceded that Deputy Hallman was, in fact, not involved in her arrest.  That arrest was

9    completed solely by Officer Bender without any involvement or participation by Deputy Hallman.

10    The crux of Plaintiff's argument against Deputy Hallman appears to be that he was cordial and

11    engaged in a prolonged discussion with Defendant Green while Officer Bender was conducting his

12    investigation.  The fact that an officer is cordial and respectful to a suspect is simply insufficient to

13    form the basis of liability; it is not a prohibited action under any standard or law.  Deputy Hallman's

14    response to Plaintiff's queries at deposition on this issue was that his training and experience have led

15    him to believe that acting respectful to suspects is an appropriate method to deescalate situations and

16    avoiding the use of force.

17    Also significant was Plaintiff's actions some two days after this incident.  On or about April 3,

18    2008, Plaintiff contacted the City of Napa Police Department to provide further information to Officer

19    Bender regarding the incident.  At that time, Plaintiff provided a statement written in her own

20    handwriting, stating, "I am sorry I did not let you know that Donald restrained me and hurt me.  I did

21    not want him to be in trouble."  Plaintiff made a similar statement in her application for a restraining

22    order, stating, "I did not describe the physical altercation" to the police.  Plaintiff's sworn testimony in

23    Court is in accord, stating that she "said nothing" to the police.  Although Deputy Hallman was

24    involved in this incident, these undisputed facts confirm that Plaintiff said nothing to the police and

25    based on their observations at the scene there was probable cause for Officer Bender to arrest Plaintiff

26    on the evening in question.  Thus, the officer's actions were appropriate and justified and there can be

27    no claims for civil rights or conspiracy violations.

28    ///

III.     **LEGAL ARGUMENT**

    A.     **Deputy Hallman's Actions Were Privileged**

       Even assuming Plaintiff is able to somehow suggest that Deputy Hallman was involved in her arrest, he is nevertheless immune from liability as there as a reasonable basis for the officers to conclude probable cause existed to arrest Plaintiff.  As referenced above, this matter began with a call to the City of Napa 9-1-1 dispatcher for a potential domestic assault situation.  Such situations are governed by Penal Code Section 13701.  In pertinent part, that statute reads as follows:

> **13701**.  (a) Every law enforcement agency in this state shall develop, adopt, and implement written policies and standards for officers' responses to domestic violence calls by January 1, 1986.  **These policies shall reflect that domestic violence is alleged criminal conduct.**  Further, they shall reflect existing policy that a request for assistance in a situation involving domestic violence is the same as any other request for assistance where violence has occurred.

> (b) The written policies shall **encourage the arrest of domestic violence offenders if there is probable cause that an offense has been committed.**  These policies also **shall require the arrest of an offender, absent exigent circumstances**, if there is probable cause that a protective order issued under Chapter 4 (commencing with Section 2040) of Part 1 of Division 6, Division 10 (commencing with Section 6200), or Chapter 6 (commencing with Section 7700) of Part 3 of Division 12, of the Family Code, or Section 136.2 of this code, or by a court of any other state, a commonwealth, territory, or insular possession subject to the jurisdiction of the United States, a military tribunal, or a tribe has been violated.  These policies shall discourage, when appropriate, but not prohibit, dual arrests.

> **Peace officers shall make reasonable efforts to identify the dominant aggressor in any incident.  The dominant aggressor is the person determined to be the most significant, rather than the first, aggressor**.  In identifying the dominant aggressor, an officer shall consider the intent of the law to protect victims of domestic violence from continuing abuse, the threats creating fear of physical injury, the history of domestic violence between the persons involved, and whether either person acted in self-defense.  (Emphasis added.)

       When the officers arrived on site, they encountered a situation where both Plaintiff and Defendant Green were verbally aggressive towards each other.  Only Defendant Green alleged to have been the victim of physical attacks by Plaintiff.  Despite direct questions by the officers, Plaintiff

continually responded that "Nothing happened."  It was not until three days following the incident that Plaintiff finally agreed to speak with the City officers where she made allegations of being the victim of domestic abuse by Defendant Green.  It was not something she told the officers at the scene of the incident.

After Officer Bender was able to confirm that Green incurred personal injuries caused by Plaintiff, he attempted to question Plaintiff.  Despite repeated attempts, Plaintiff refused to respond to Bender's questions, instead insisting that "nothing happened."  Given the clear physical evidence confirming an assault upon Green coupled with Plaintiff's refusal to provide any information to the officers, Bender determined probable cause existed for Plaintiff's arrest.

As referenced in the cited statutes, the officers were required to identify the dominant aggressor and to make an arrest.  The investigation revealed physical injuries upon Defendant Green's body (fresh scratches on his chest and arms) as well as a statement that Plaintiff had shoved and physically injured Green.  By comparison, Plaintiff continued to state to the officers that "Nothing happened" and had no visible injuries other than some reddening at her wrists.  The only reasonable conclusion that the officers could thus reach was that Plaintiff was the dominant aggressor.  As a result, the officers were required to arrest her.[1]

Plaintiff's arrest was lawful and based on probable cause, so no cause of action for false arrest or the related civil rights violations may occur.  Probable cause to arrest exists if "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the Plaintiff] had committed a crime."  (*Beier v. City of Lewiston*, 354 F.2d 1058, 1065 (9th Cir. 2004).)  Hence, where the restraint is lawful the resulting "imprisonment" is not false and is not actionable in tort.  (*Peterson v. Robinson*, 43 Cal.2d 690 at 696 (1954).)  The available facts confirm that the Defendant officers responded to a domestic dispute.  When they arrived, they observed Defendant Green with scratches and marks across his chest and arms coupled with undisputed testimony of Green being "shoved" by Plaintiff.  In comparison, Plaintiff refused to talk with the officers, instead insisting nothing had happened.  The reasonable conclusion for the officers

---

[1] Notwithstanding the duty to make an arrest, an officer has discretion on what violation to charge an assailant.  (*People v. Howell*, 30 Cal.3d 228 (1973); *Devenpeck v. Alford*, 543 U.S. 146 (2004).)  As a result, Plaintiff was cited for a violation of Penal Code Section 243.

1  was that Plaintiff had physically assaulted Defendant Green, which authorized the officers to arrest

2  Plaintiff for violation of Penal Code Section 243 and/or Section 13701.

3  **B.      Plaintiff's Conspiracy Claim Fails as a Matter of Law**

4  To allege a conspiracy under Section 1983, Plaintiff must show specific facts to support the

5  existence of the claimed conspiracy.  (See, *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.

6  1989).)  The elements to establish a cause of action for conspiracy under Section 1983 are as follows:

7  (1) the existence of an express or implied agreement among defendants to deprive plaintiff of his

8  constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement.  (See,

9  *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991).)  Further, there must be evidence of an

10  agreement or meeting of the minds to violate Plaintiff's constitutional rights.  (See, *Woodrum v.*

11  *Woodwater Co.*, 866 F.2d 1121, 1126 (9th Cir. 1989).)

12  Even if Plaintiff could establish a violation of a clearly established right, law enforcement

13  officials who reasonably but mistakenly conclude that probable cause is present are entitled to

14  immunity.  (*Hunter*, at 227; see also, *Jackson v. City of Bremerton*, 268 F.3d 646, 651-653 (9th Cir.

15  2001).)  Thus, even if Plaintiff could prove her arrest was improper, the officers are still insulated from

16  her claims, especially given her refusal to speak with the officers or provide the relevant information

17  during the underlying investigation.  There is simply no evidence of an unlawful conspiracy here and

18  Deputy Hallman must be dismissed.

19  **IV.    CONCLUSION**

20  Deputy Hallman respectfully submits that Plaintiff's claims against him fall for numerous

21  reasons.  There was ample probable cause to arrest Plaintiff given the information available to the

22  officers during the incident.  Even assuming such probable cause was absent, Deputy Hallman's

23  actions as a cover officer were reasonable and entitle him to qualified immunity.

24  Dated:  March 23, 2011                    Respectfully submitted,

25                                            MEYERS, NAVE, RIBACK, SILVER & WILSON

26

27                                            By:_____/s/  Kevin E. Gilbert_____
                                                  Kevin E. Gilbert
28                                                Attorneys for Defendant
                                                  COUNTY OF NAPA DEPUTY SHERIFF
   1796334_1.DOC                                  JOHN HALLMAN

7