Gregory M. Fox, State Bar No. 070876
BERTRAND, FOX & ELLIOT
The Waterfront Building
2749 Hyde Street
San Francisco, California 94109
Telephone: (415) 353-0999
Facsimile:  (415) 353-0990

Michael W. Barrett, City Attorney, State Bar No. 155968
David C. Jones, Deputy City Attorney, State Bar No. 129881
NAPA CITY ATTORNEY'S OFFICE
CITY OF NAPA
P.O. Box 660
955 School Street
Napa, CA  94559
Telephone:  (707) 257-9516
Fax:  (707) 257-9274

Attorneys for Defendants
CITY OF NAPA and OFFICER GARTH BENDER

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ HERNANDEZ,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CITY OF NAPA, et al.,<br><br>　　　　Defendants. | Case No. C09-02782 EDL<br><br>**DEFENDANTS CITY OF NAPA AND GARTH BENDER'S MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Trial Date:  June 4, 2012<br>Courtroom D, 15th Floor<br>Magistrate Judge Elizabeth D. Laporte |

**TABLE OF CONTENTS**

**Page(s)**

I. SUMMARY OF ARGUMENT & STATEMENT OF ISSUES TO BE DECIDED ...................1

II. STATEMENT OF FACTS ..................................................................................................2

III. ARGUMENT........................................................................................................................5

    A. The Applicable Legal Standard For Entry of Judgment As A Matter of Law..................5

    B. The Uncontroverted Evidence Establishes That Plaintiff's Civil Rights Were Not Violated And Her Claims Under 42 U.S.C. Section 1983 Are Unsupportable .................5

        1. Plaintiff Has Failed to Present Evidence That Her Arrest For Domestic Violence Was Not Supported By Ample Probable Cause ....................................5

        2. Officer Bender Is Entitled To Qualified Immunity For His Actions .....................8

        3. The Undisputed Evidence Does Not Support Plaintiff's Conspiracy Claim .......11

        4. The Undisputed Evidence Does Not Support A Claim For False Arrest Under State Law ..................................................................................................12

    C. The Undisputed Evidence Fails To Support A Claim For Intentional Infliction Of Emotional Distress.............................................................................................................12

    D. The Undisputed Evidence Fails to Support A Claim for Punitive Damages...................13

IV. CONCLUSION...................................................................................................................13

<mark>Case3:09-cv-02782-EDL   Document316   Filed06/13/12   Page3 of 17</mark>

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acri v. Varian Assoc.*
　114 F.3d 999 (9th Cir. 1997) .................................................................................................. 9

*Adams v. Williams*
　407 U.S. 143 (1972) ............................................................................................................ 5, 6

*Alexander v. County of Los Angeles*
　64 F.3d 1315 (9th Cir. 1995) .................................................................................................. 9

*Anderson v. Creighton*
　483 U.S. 635 (1987) ............................................................................................................... 9

*Aquino v. Superior Court*
　21 Cal. App. 4th 847 (1993) ................................................................................................. 12

*Ashley v. Sutton*
　492 F.Supp.2d 1230 (Dist. Ore. 2007) ................................................................................... 9

*Avalos v. Baca*
　596 F.3d 583 (9th Cir. 2010) ........................................................................................... 11, 12

*Baker v. McCollan*
　443 U.S.137 (1979) ................................................................................................................ 6

*Beier v. City of Lewiston*
　354 F.3d 1058 (9th Cir. 2004) ................................................................................................ 6

*Bogard v. Employers Cas. Co.*
　164 Cal. App. 3d 602 (1985) ............................................................................................... 12

*Brinegar v. United States*
　338 U.S. 160 (1949) ............................................................................................................... 6

*Broam v. Bogan*
　320 F.3d 1023 (9th Cir. 2003) ................................................................................................ 6

*Brousseau v. Haugen*
　543 U.S. 194 (2004) ............................................................................................................... 9

*Crowe v. County of San Diego*
　608 F.3d 406 (9th Cir. 2010) ................................................................................................ 11

*Hunter v. Bryant*
　502 U.S. 224 (1991) ............................................................................................................... 9

*Illinois v. Gates*
　462 U.S. 213 (1983) ............................................................................................................... 6

**TABLE OF AUTHORITIES: (continued)** **Page(s)**

*Maraziti v. First Interstate Bank of California*
  953 F.2d 520 (9th Cir. 1992) ................................................................................................... 9, 10

*Mendocino Environmental Center v. Mendocino County*
  192 F.3d 1283 (9th Cir. 1999) ....................................................................................................... 11

*O'Toole v. Superior Court*
  140 Cal.App.4th 488 (2006) ......................................................................................................... 12

*Pearson v. Callahan*
  ___ U.S. ___, 129 S.Ct. 808 (2009) ................................................................................................ 9

*Reynolds v. County of San Diego*
  84 F.3d 1162 (9th Cir. 1996) .......................................................................................................... 9

*Rodis v. City and County of San Francisco*
  558 F.3d 964 (9th Cir. 2009) .......................................................................................................... 9

*Saucier v. Katz*
  533 U.S. 194 (2001) ....................................................................................................................... 9

*Winarto v. Toshiba Am. Electronics Components, Inc.*
  274 F.3d 1276, (9th Cir. 2001) ....................................................................................................... 5

*Wong v. Tai Jing*
  __ Cal.Rptr.3d__, 2010 WL 4457330 (2010) ............................................................................... 12

*Woodrum v. Woodward County*
  *OK*, 866 F.2d 1121 (9th Cir. 1989) .............................................................................................. 11

**Statutes**

Pen. Code, § 13701 ............................................................................................................... 4, 7, 10, 11

Pen. Code, § 13701(b) ..................................................................................................................... 10

Pen. Code, § 243(e)(1) .................................................................................................................. 4, 8

Pen. Code, § 836 ................................................................................................................................ 6

Pen. Code, § 847(b) ......................................................................................................................... 12

**Other Authorities**

Napa Police Department General Order 91-12 ....................................................................... 4, 5, 10

Napa Police Department General Order 91-12, subsection "C.4" .................................................. 11

**Rules**

Fed. Rules.Civ.Proc., rule 50 ............................................................................................................ 2

Fed. Rules Civ. Proc., rule 50(a) ................................................................................................... 1, 5

COME NOW Defendants City of Napa and Officer Garth Bender and hereby submit the following Motion for Judgment as a Matter of Law.

I.       **SUMMARY OF ARGUMENT & STATEMENT OF ISSUES TO BE DECIDED**

This motion is brought pursuant to Federal Rules of Civil Procedure, Rule 50(a), as set forth more fully below, on the grounds that plaintiff has failed to present admissible evidence from which a reasonable jury could find (1) that plaintiff suffered a false arrest under 42 U.S.C. § 1983 or state law; (2) that defendants Officer Bender and Deputy Hallman conspired to falsely arrest plaintiff in violation of 42 U.S.C. § 1983; (3) that plaintiff suffered intentional infliction of emotional distress as a result of her arrest, and (4) that plaintiff is entitled to punitive damages.  Further, Officer Garth Bender is entitled to qualified immunity as to all claims.  This motion is based on the papers and pleadings on file herein, and on such oral and documentary evidence as have been set forth at trial.

Plaintiff's claim for false arrest fails because she has not presented any direct evidence that Officer Bender did not have probable cause to arrest her for violation of California's domestic violence laws.  Plaintiff's arrest for domestic violence battery was supported by probable cause based upon the totality of the circumstances known to Officer Bender at the time. As the trial testimony has demonstrated, plaintiff's boyfriend, Donald Green, had visible injuries and reported that plaintiff hit, punched and scratched him, while plaintiff refused to answer questions about the altercation, had no visible injuries, denied being physically injured and did not herself believe she was injured. She repeatedly told the officers at the scene that nothing happened and she never stated that Green physically attacked her in any way in her verbal or written statements on the date of the incident.  The objective facts and circumstances known to Officer Bender at the time more than sufficiently supported probable cause to believe plaintiff committed battery against Green and that she was the dominant aggressor in the incident.  Officer Bender was mandated by Napa Police Department policy to make an arrest in this situation.

Even if Officer Bender's conduct could somehow be construed to have violated plaintiff's rights, he is entitled to qualified immunity as to all claims because police officers are entitled to qualified immunity even if they acted unconstitutionally, as long as a reasonable officer could have believed the conduct lawful. All of the material evidence indicates that Officer Bender's belief that plaintiff was the

1

DEFENDANTS CITY OF NAPA AND GARTH BENDER'S MOTION FOR JUDGMENT AS A MATTER OF LAW

dominant aggressor in a domestic violence incident was reasonable under the facts known to him at the time, based on the information he received from the involved parties, his training and experience, and his understanding that his department policy mandated that he make an arrest if the parties were or had been in a dating relationship and the victim suffered a physical injury. Thus, it was reasonable for Officer Bender to believe that he was acting lawfully when he arrested plaintiff.

Because Plaintiff was not falsely arrested, there can be no conspiracy to falsely arrest her. Nor has plaintiff presented any direct or indirect evidence that Officer Bender and Deputy Hallman conspired to falsely arrest her. The trial testimony has shown that neither Officer Bender nor Deputy Hallman had met Green before the April 1, 2008 incident, and that Green's job as a Napa State Hospital Police Officer was not a factor in Officer Bender's decision to arrest plaintiff. Plaintiff has presented no evidence that Officer Bender and Deputy Hallman made an agreement or had a meeting of the minds to violate her constitutional rights.

Similarly, because there was no false arrest, plaintiff's claim for intentional infliction of emotional distress fails. As the arrest of plaintiff was reasonable, supported by probable cause, and in fact mandated by Napa Police Department Policy, Officer Bender could not have acted with the intent to cause or reckless disregard of the probability of causing emotional distress to plaintiff.

Moreover, Officer Bender did not act with any malicious intent in his decision to arrest plaintiff. As evidenced by the recording and the testimony, Officer Bender spoke to plaintiff in a calm and respectful voice and apologized to her when he handcuffed her.

Given the absence of any evidence from which a reasonable jury could find for plaintiff, this Court should enter judgment as a matter of law in favor of the Defendants pursuant to F.R.C.P. 50.

## II. STATEMENT OF FACTS

The following facts were set forth through the trial testimony. Plaintiff and Donald Green were involved in an on-and-off dating relationship since 2006 or 2007, had lived together in December 2007, and had resumed their relationship one week before the April 1, 2008 incident. On April 1, 2008, plaintiff and Green got into an argument at work and broke up. Later that night when plaintiff arrived home, she found Green in her house wearing only his underwear. They got into a heated verbal argument. Green appeared intoxicated and stumbled towards plaintiff, stating he wanted to talk. She

claims that she tried to run towards the front door, and she states that Green grabbed her from behind and they fell to the floor. Plaintiff says she tried to get away and said she wanted to leave. She telephoned 911 while yelling, "get the f*#% out of my house." Plaintiff and Green continued verbally and physically fighting, including plaintiff admittedly hitting, kicking and slapping Green and repeatedly punching his chest.

City of Napa Police Officer Garth Bender was dispatched to plaintiff's residence in response to the 911 call. Dispatch advised that it received a 911 call, someone was heard yelling "get the f*#% out of my house," and then the line was disconnected. County of Napa Sheriff's Deputy Hallman also responded to the call. When Officer Bender approached the front door, he heard a male and female loudly arguing inside the residence, but no screaming, calls for help, or sounds of a physical fight.

Officer Bender knocked on the door and announced himself as a Police Officer. Green answered the door dressed only in his boxer shorts. He had visible scratch marks all over his chest. Plaintiff and Green were separated and Deputy Hallman went down the hallway to speak with plaintiff, while Officer Bender spoke with Green.

Deputy Hallman spoke with plaintiff in her bedroom and questioned her about what had occurred. He asked if she was okay, and plaintiff stated she was. Plaintiff said that the residence was hers and she had been in an on-and-off dating relationship with Green. She did not say anything about Green having physically injured her. Deputy Hallman asked her if she needed medical attention and plaintiff replied that she did not; she herself did not believe she was injured.

Green told Officer Bender that he and plaintiff were in an on-and-off relationship and had previously lived together. He stated they had gotten into an argument about their relationship and plaintiff had pushed and shoved him, scratching his chest and right arm. Officer Bender asked whether Green had put his hands on plaintiff and Green said he had not. Officer Bender asked Green to write a detailed statement about what happened, and Green confirmed in his written statement what he had told Officer Bender verbally.

Officer Bender spoke with plaintiff to try to determine what had happened. Officer Bender examined plaintiff's mouth with a flashlight and did not observe any injury. It is undisputed that plaintiff did not respond when Officer Bender asked if she'd been hit in the mouth. Plaintiff did not believe she

had any injury to her mouth and did not know why he had examined her mouth. Officer Bender also looked at plaintiff's wrists but did not note any injury. Officer Bender photographed plaintiff. The photographs do not show any injury to plaintiff.

Officer Bender repeatedly asked plaintiff what happened, but she refused to answer and only said that "Nothing" was going on. Plaintiff claims that she told Officer Bender that "Donald had attacked" her, but she did not elaborate on what that meant and she specifically did not say that Green *physically* attacked her. Testimony from the officers that responded to the residence indicates that plaintiff in fact said nothing in response to questions about what happened. Plaintiff's refusal to answer any questions caused Officer Bender to believe she was hiding something and possibly guilty of some criminal conduct. Further, Plaintiff provided a statement in her own handwriting stating that she and Green were involved in a <u>verbal</u> altercation. Plaintiff understood Officer Bender wanted her to write in her statement what had happened from the beginning of the incident to the end.

Based upon the visible injuries to Green's chest, plaintiff's refusal to explain what had happened and her repeated claims that they only had a verbal argument, Officer Bender determined that plaintiff was the dominant aggressor in the incident and that there was probable cause to arrest her for domestic violence against Green. Pursuant to the requirements of Penal Code Section 13701 and Napa Police Department General Order 91-12 mandating arrest of the dominant aggressor in a domestic violence situation, plaintiff was arrested for violation of Penal Code § 243(e)(1).

On April 3, 2008, plaintiff contacted the Napa Police Department and asked to speak to the officer who arrested her so that she could give her side of the story. Plaintiff provided another handwritten statement that was three pages long. She wrote in her second statement that she and Green were involved in a physical altercation, and she wrote "I am sorry I did not let you know that Donald restrained me and hurt me." On April 8, 2008, plaintiff filed a handwritten statement with the Napa County Superior Court, <u>under penalty of perjury</u>, again admitting that, "I chose not to say too much." She further admitted that she "did not describe the physical altercation" to the police. She also testified at her restraining order hearing that she kept quiet and did not inform the officers she had been attacked because she did not want to get Green or herself in trouble.

Before the incident, Officer Bender received training in handling domestic violence situations

while attending the police academy and he received additional training at least every other year for the thirteen years before the incident. Napa Police Department General Order 91-12 sets forth the City's policy and procedures for handling domestic violence situations. Officer Bender's conduct complied with the requirements of his Department's general order.

## III. ARGUMENT

### A. The Applicable Legal Standard For Entry of Judgment As A Matter of Law

Under Rule 50(a) of the Federal Rules of Civil Procedure, a court may enter judgment as a matter of law if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." (F.R.C.P. 50(a).) Judgment as a matter of law should be granted when, "[u]nder the governing law, there can be but one reasonable conclusion as to the verdict. (*Winarto v. Toshiba Am. Electronics Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001).) Because plaintiff has failed to present evidence from which a rational jury could find in her favor, judgment as a matter of law should be entered in favor of the defendants.

### B. The Uncontroverted Evidence Establishes That Plaintiff's Civil Rights Were Not Violated And Her Claims Under 42 U.S.C. Section 1983 Are Unsupportable

Plaintiff asserts claims under 42 U.S.C. Section 1983 for violation of her civil rights based upon claims of unlawful arrest and conspiracy to violate civil rights. The undisputed evidence does not support liability against Officer Bender under either theory.

#### 1. Plaintiff Has Failed to Present Evidence That Her Arrest For Domestic Violence Was Not Supported By Ample Probable Cause

Plaintiff's false arrest claim fails because she has not come forward with the evidence necessary to establish that Officer Bender did not have probable cause to arrest her. Probable cause to arrest depends upon "whether, at the moment the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" (*Adams v. Williams*, 407 U.S. 143, 148 (1972). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. . . . Rather,

the court will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action. (*Id*. at 149.)

'Probable cause' by definition deals not with certainty, but with probabilities: ". . . the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." (*Illinois v. Gates*, 462 U.S. 213, 231-232 (1983.) The term 'probable cause' means "a seizure made under circumstances which warrant suspicion. . . . it is clear that 'only the probability and not a prima facie showing of criminal activity is the standard of probable cause.'" [Internal citations omitted.] (*Id.* at 235.) Further, once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused. (*Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003).)

As the Supreme Court stated, "The Constitution does not guarantee that only the guilty will be arrested. If it did, section 1983 would provide a cause of action for every defendant acquitted—indeed for every suspect released." (*Baker v. McCollan*, 443 U.S.137, 145 (1979) (dismissing section 1983 claim by individual detained on the basis of mistaken identity).) All that is required is that – as here—the facts fall on the side of probability. (*Brinegar v. United States*, 338 U.S. 160, 176 (1949); *Beier v. City of Lewiston,* 354 F.3d 1058, 1065 (9th Cir. 2004) (probable cause exists if, "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability the [plaintiff] had committed a crime").)

Plaintiff was arrested for misdemeanor battery under California Penal Code § 243, which proscribes domestic violence. A peace officer may arrest a suspect who has committed battery against a dating partner or former dating party without a warrant where (1) "the peace officer has probable cause to believe that the person to be arrested has committed the assault or battery, whether or not it has in fact been committed" and (2) "the peace officer makes the arrest as soon as probable cause arises to believe that the person to be arrested has committed the assault or battery, whether or not it has in fact been committed." (Cal. Pen. Code § 836.)

Plaintiff attempts to argue that Officer Bender did not have probable cause because she told him that Green broke into her house and attacked her. All other evidence presented at trial is contrary to plaintiff's claim that she told Officer Bender that Green attacked her. Her handwritten statements signed

under penalty of perjury indicate that she told the officers "nothing" when they repeatedly asked what had happened. Even taking plaintiff's statements as true, Officer Bender still had probable cause to arrest plaintiff as the dominant aggressor in the domestic violence because the physical evidence revealed that Green was injured and plaintiff was not. California Penal Code § 13701 requires peace officers to make "reasonable efforts to identify the dominant aggressor in any incident. The dominant aggressor is the person determined to be the most significant, rather than the first aggressor." Accordingly, even if Green was the first aggressor, plaintiff was still the dominant aggressor, as she was the most significant aggressor, as evidence by the wounds she inflicted on Green. After determining that plaintiff was the dominant aggressor in a domestic violence incident, Officer Bender was mandated by Napa Police Department policy to arrest her.

The facts of the instant case establish as a matter of law that plaintiff's arrest in the instant case was supported by ample probable cause. When Officer Bender arrived on the scene he observed that Green had significant, visible scratches all over his chest that looked like he had been attacked by a wild cat. During questioning, Green told Officer Bender that he and plaintiff were involved in an off-and-on relationship and had previously lived together. He also told Officer Bender that he and plaintiff had gotten into an argument and plaintiff pushed and shoved him, scratching his right arm and chest. He denied striking or physically assaulting plaintiff.

By contrast, plaintiff refused to answer questions about the incident, was uncommunicative and evasive, and told Officer Bender and Deputy Hallman that "nothing" happened. Plaintiff denied being injured and Officer Bender did not observe any injuries despite examining her wrists and the inside of her mouth with a flashlight. She never told Officer Bender or Deputy Hallman that Green hit, restrained or otherwise physically assaulted her. She only asked whether Green had reported that *she* hit *him*. Plaintiff was given ample opportunities to advise Officer Bender of physical injury or any physical contact by Green, yet she never made any such claims verbally or in writing.

Although plaintiff now claims she told Officer Bender that Green attacked her, the evidence has shown that she never claimed that Green physically attacked her. In fact, she specifically scratched out the word "physical" on her handwritten statement before Officer Bender could see what she wrote. Plaintiff only first reported a physical altercation with Green when she wrote out a second statement two

days after her arrest, when it became apparent to her that she faced criminal charges for the incident. Significantly, even if plaintiff had told Officer Bender that Green attacked her, this would not negate probable cause to believe plaintiff was the <u>dominant</u> aggressor in the incident, given Green's visible injuries and his statements that plaintiff hit, punched and scratched him viewed against plaintiff's refusal to answer questions or explain what happened and the absence of visible injuries to her.

Moreover, that plaintiff told at least one officer that she owned the house, that Green was already there when she arrived home and that she wanted him out of the house does not negate probable cause to believe she was the dominant aggressor in committing battery against Green. Both she and Green stated they had been in a romantic relationship and had lived together at some point, and there was nothing to indicate Green was trespassing. Based upon the limited information she revealed, Officer Bender reasonably could believe that Green was permissibly in the home when they got into a physical confrontation in which Green was injured and plaintiff was the dominant aggressor.

The totality of the circumstances known to Officer Bender at the time he arrested plaintiff for domestic battery were sufficient to support suspicion that plaintiff had committed battery against Green in violation of Penal Code section 243 (e)(1). Whether she in fact had committed battery or was the dominant aggressor is immaterial. The law does not require that only guilty persons are arrested, but allows for reasonable mistakes. Officer Bender certainly could not be expected to know purported circumstances about the incident that plaintiff refused to reveal, and he had no obligation, authority or means to force plaintiff to provide different or additional information than what she chose to reveal after repeated questioning. Officer Bender's decision to arrest plaintiff for misdemeanor battery was supported by ample probable cause and did not violate plaintiff's Fourth Amendment rights.

### 2. Officer Bender Is Entitled To Qualified Immunity For His Actions

Even if Officer Bender's conduct could somehow be construed to violate plaintiff's rights, Officer Bender is entitled to qualified immunity. The doctrine of qualified immunity protects government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. . . . The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." (*Pearson v. Callahan*, 555 U.S. 223, 231

(2009).) "[O]fficers are entitled to qualified immunity even if they acted unconstitutionally, as long as a reasonable officer could have believed the conduct lawful." (*Alexander v. County of Los Angeles,* 64 F.3d 1315, 1322 (9th Cir. 1995), overruled in part on other unrelated grounds, as stated in *Ashley v. Sutton,* 492 F.Supp.2d 1230, 1252 (Dist. Ore. 2007)).

Qualified immunity applies where a reasonable officer could have believed the conduct was justified, notwithstanding that reasonable officers could disagree on that issue. (*Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996), overruled in part on other unrelated grounds, *Acri v. Varian Assoc.,* 114 F.3d 999 (9th Cir. 1997).). A court discerns whether "the [officer] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable interpretation of the events can be constructed … after the fact." (*Hunter v. Bryant,* 502 U.S. 224, 228 (1991).) "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." (*Id*. at 227.)

The inquiry as to whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." (*Saucier v. Katz,* 533 U.S. 194, 205 (2001), overruled in part by *Pearson,* 555 U.S. at 225.) The right allegedly violated "must have been 'clearly established' in a more particularized, and hence more relevant sense . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." (*Id*. at 202.) Qualified immunity recognizes "that reasonable mistakes can be made as to the legal constraints on particular police conduct. . . . If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense." (*Brousseau v. Haugen,* 543 U.S. 194, 205 (2004).) It is plaintiff's burden to prove that the law governing the officers' conduct was "clearly established." (*Maraziti v. First Interstate Bank of Cal.,* 953 F.2d 520, 523 (9th Cir. 1992).

Moreover, "the Supreme Court has 'recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present.' . . . In such cases those officials should not be held personally liable." [Internal citations and ellipses omitted.] (*Rodis v. City and County of San Francisco*, 558 F.3d 964, 970-71 (9th Cir. 2009), *citing Hunter, supra, and Anderson v. Creighton,* 483 U.S. 635, 641 (1987).)

Officer Bender is entitled to qualified immunity. First, plaintiff has failed to establish the law was clearly established such that Officer Bender would have been on notice that his conduct under the particular circumstances of this case was prohibited. It is plaintiff's burden to prove that the law governing the officer's conduct was "clearly established." *(Maraziti,* 953 F.2d at 523.) Officer Bender plainly was entitled to rely on his observations of plaintiff and Green, their respective statements about the incident, plaintiff's physical condition, demeanor and refusal to respond in determining probable cause, and he was clearly authorized to arrest plaintiff under the circumstances because it reasonably appeared that she was the dominant aggressor in a domestic violence incident.

Significantly, the Napa County Superior Court judge who presided over plaintiff's restraining order hearing against Green issued an order stating that "it was impossible to determine who was the principle aggressor" in this incident. Even after hearing extensive testimony from both parties and receiving a more complete story than was available to Officer Bender the night of the arrest, a judge could not determine the dominant aggressor in that situation. It was thus reasonable for Officer Bender to make a determination that plaintiff was the dominant aggressor based on the much more limited set of facts available to him at the time of the arrest.

Indeed, the Penal Code and Napa Police Department General Order 91-12 required Officer Bender to arrest plaintiff under the circumstances. Penal Code § 13071 provides in relevant part that:

(a) Every law enforcement agency in this state shall develop, adopt, and implement written policies and standards for officers' responses to domestic violence calls . . .

(b) The written policies shall encourage the arrest of domestic violence offenders if there is probable cause that an offense has been committed. . . . These policies shall discourage, when appropriate, but not prohibit, dual arrests. **Peace officers shall make reasonable efforts to identify the dominant aggressor in any incident. The dominant aggressor is the person determined to be the most significant, rather than the first, aggressor**.

Napa Police Department General Order 91-12 incorporates Penal Code § 13701, including much of the precise language of Section 13701(b), and also provides that misdemeanor arrests "shall be made when there is reasonable cause to believe that a misdemeanor has been committed whether in the presence of an officer or not. The Order also notes that "Releasing a domestic violence suspect on a

10
DEFENDANTS CITY OF NAPA AND GARTH BENDER'S MOTION FOR JUDGMENT AS A MATTER OF LAW

citation is strongly discouraged because of the likelihood of a continuing offense." (General Order 91-12, subsection "C.4".)

Accordingly, under Penal Code § 13701 and the Napa Police Department General Order, Officer Bender was required to arrest plaintiff under the circumstances, given Green's visible injuries and statements, absence of injuries to plaintiff, her statement that "nothing" happened and her refusal to provide any information as to what occurred. Plaintiff has thus failed to establish that the law was clearly established *prohibiting* Officer Bender from arresting her under the circumstances of this case. A reasonable officer in the same circumstances could and would have believed that the arrest of plaintiff was justified. Even if Officer Bender's determination that plaintiff was the dominant aggressor was mistaken, his belief that probable cause existed was reasonable and plaintiff has failed to present evidence that Officer Bender is not entitled to qualified immunity.

### 3. The Undisputed Evidence Does Not Support Plaintiff's Conspiracy Claim

There is no evidence at all to support plaintiff's claim that Officer Bender conspired with Deputy Hallman and Green to deprive her of her civil rights. "To establish liability for a conspiracy in a § 1983 case, a plaintiff must 'demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights. . . . 'Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants.'" . . . To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." (*Crowe v. County of San Diego,* 608 F.3d 406, 440 (9th Cir. 2010), *citing Mendocino Environmental Center v. Mendocino* County, 192 F.3d 1283, 1301 (9th Cir. 1999). "The defendants must have, 'by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage.'" [Internal citations omitted.] (*Mendocino Environ. Center*, 192 F.3d at 1301.)

Further, a "conspiracy allegation, even if established, does not give rise to liability under § 1983 unless there is an actual deprivation of civil rights" resulting from the conspiracy. (*Woodrum v. Woodward County, OK*, 866 F.2d 1121, 1126 (9th Cir. 1989); *Mendocino Environ. Center*, 192 F.3d at 1301 and *Avalos v. Baca,* 596 F.3d 583, 592 (9th Cir. 2010).) "In order to state an adequate claim for relief under section 1983, plaintiff must allege and prove <u>both</u> a conspiracy <u>and</u> an actual deprivation of

rights; mere proof of a conspiracy is insufficient to establish a section 1983 claim." (*Avalos*, 596 F.3d at 592, *citing Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980).)

As discussed fully above, plaintiff has not put forth evidence that her arrest was not supported by probable cause.  Because there was no false arrest, and thus no deprivation of rights, Plaintiff's conspiracy claim fails. Moreover, plaintiff has not established that Officer Bender and Deputy Hallman shared a common objective to wrongfully arrest plaintiff, particularly where Green was visibly injured and plaintiff denied anything happened, refused to provide any information and never claimed she was physically assaulted by Green.

### 4. The Undisputed Evidence Does Not Support A Claim For False Arrest Under State Law

As developed at length above, Officer Bender cannot be liable for false arrest because probable cause existed for plaintiff's arrest. (*O'Toole v. Superior Court*, 140 Cal.App.4th 488, 511-512 (2006); Penal Code Section 847, "(b) There shall be no civil liability on the part of, and no cause of action shall arise against, any peace officer . . . for false arrest or false imprisonment arising out of any arrest . . . [where] (1) The arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful . . .".)

## C. The Undisputed Evidence Fails To Support A Claim For Intentional Infliction Of Emotional Distress

Plaintiff has no evidence to show sufficiently egregious, intentional conduct by Officer Bender to establish liability for intentional infliction of emotional distress.  "The elements of a prima facie case of intentional infliction of mental distress are (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." (*Aquino v. Superior Court,* 21 Cal. App. 4th 847, 856 (1993), *Bogard v. Employers Cas. Co.* (1985) 164 Cal. App. 3d 602, 616).) The undisputed evidence fails to show outrageous conduct by Officer Bender, or that he intended to cause plaintiff emotional distress or recklessly disregarded the probability emotional distress would result, particularly given that probable cause supported plaintiff's arrest.  Plaintiff's claim for intentional infliction of emotional distress is unsupportable and defendants should be entitled to judgment as a

matter of law.

### D. The Undisputed Evidence Fails to Support A Claim for Punitive Damages

Plaintiff has failed to establish that there is a basis for her punitive damages claim against Officer Bender.  There is no evidence that Officer Bender had any malicious intent toward plaintiff or that he intended to cause her harm when he arrested her.  His tone of voice was kind, he was apologetic, and he explained to plaintiff that he was acting under a mandate.  Further, after plaintiff called Officer Bender back to her house on April 3, 2008 in order to tell him her side of the story, Officer Bender requested prosecution of Green and suggested that plaintiff get a Temporary Restraining Order against Green.

## IV. CONCLUSION

For the foregoing reasons, the City of Napa and Officer Bender submit that they are entitled to judgment as a matter of law on all claims.

Dated:  June 13, 2012                                      BERTRAND, FOX & ELLIOT

By:  _____/s/_____
Gregory M. Fox
Attorneys for Defendants
CITY OF NAPA and
OFFICER GARTH BENDER